## 24326. AMERICAN NATIONAL INSURANCE COMPANY
### v. CHAPPELEAR.

DECIDED OCTOBER 2, 1935.

*Tye, Thomson & Tye, R. A. Edmondson Jr.,* for plaintiff in error.

*Robert T. Efurd, Mose S. Hayes, F. N. Turner,* contra.

STEPHENS, J. Mrs. Annist Elizabeth Chappelear, as the beneficiary in a life-insurance policy issued to her brother, James N. McDonald, by the American National Insurance Company, instituted suit against the insurance company after the death of her brother, and after she had been paid the face value of the policy, to recover a sum representing the "double indemnity" provided for in the policy. In the petition as amended it was alleged, among other allegations, that the policy provided that "upon receipt of

due proof that the insured . . has sustained bodily injury, solely through external, violent, and accidental means, . . resulting in the death of the insured . . the company will pay, in addition to any other sums due under this policy, . . an accidental death benefit equal to the face amount of insurance stated in this policy, less," etc.; that the insured, after the issuance of the policy and while it was in force, "sustained bodily injuries solely through external, violent, and accidental means," and later died as a result thereof; that the injury received by the insured and which caused his death was a blow on his jaw received by him during a prize fight in which he was engaged, and which caused a "massive subarachnoid hemorrhage" which resulted in his death; that proof of death had been duly and timely made; and that the defendant's failure to pay was in bad faith. The plaintiff prayed for judgment, including damages for bad faith and for attorney's fees. The defendant denied liability, and specifically pleaded that the payment of the face value of the policy, which had already been made to the plaintiff was an accord and satisfaction, and amounted to full payment of all claims under the policy. The plaintiff, by an amendment to the petition, filed what seemed to be a replication to this latter plea of the defendant, in which it was alleged that the plaintiff's claim for the amount sued for as representing double indemnity was not included in the alleged settlement, that the plaintiff was illiterate and could not read the policy and understand its contents; and that she placed confidence in the superintendent of the company who misled her by misrepresentations that the policy did not contain a double death benefit. She denies that the payment which had been made to her by the defendant was received in settlement of the claim sued on. The defendant demurred on the grounds that the petition as amended set out no cause of action, and that in the amendment, which was in effect a replication of the defendant's plea of accord and satisfaction, there was no allegation that the plaintiff had tendered to the defendant the money which had been paid to the plaintiff in the alleged settlement of all claims of the plaintiff under the policy. This demurrer was overruled, and error is assigned on that ruling. The trial resulted in a verdict and judgment for the plaintiff. To the overruling of a motion for new trial the defendant excepted.

■ Since it is alleged generally in the petition that the insured died from an injury of the character which under the terms of the policy entitled the beneficiary to double benefits, and the only description of the injury alleged in the petition was that it was a blow received by him while engaged in a prize fight which brought about the condition which caused the insured's death, and since the petition otherwise sets out a cause of action, the petition as amended is not subject to general demurrer on the ground that it appears that the death was not caused from an injury sustained through external, violent, and accidental means. If the amendment in the nature of a replication to the plea of accord and satisfaction is defective in that it fails to set out a legal "defense" to the plea, the petition as thus amended, where the amendment by way of replication does not allege and set out an agreement between the parties in accord and satisfaction but merely alleges matter seeking to avoid the legal effect of the agreement in accord and satisfaction pleaded by the defendant, is not subject to general demurrer on the ground that it appears from the petition as amended that the demand sued on has been settled by an agreement between the parties in accord and satisfaction, and that the petition sets out no cause of action. The court did not err in overruling the general demurrer to the petition.

■ It appears from the uncontradicted evidence that the insured died from a "subarachnoid hemorrhage" caused from a blow upon the head received by him while engaged in a prize fight. The following, taken from the testimony of his opponent in the prize-ring, is undisputed and uncontradicted: "I was fighting down there that night with McDonald in a prize-fight. I did not have any malice in my heart towards Mr. McDonald in any way. I hardly knew him. I was fighting for a sum of money that night. It was a prize-fight. The blow I struck which caused his death was not accidental. He was trying to hit me, and I was trying to hit him. I did not have any intent to kill him when I hit him. I was wearing ten-ounce gloves that night. I did not have any horseshoe or anything like that in the glove. I just hit with a straight blow. I struck him right under the ear, left side. Caught him with my right hand. . . I struck this blow right under his ear. This is a legitimate blow. The rules of boxing allow you to strike anywhere above the waist, except right in the back of the neck.

You can hit under the ear, and that is where I struck him. It was a pretty hard blow. I have engaged in twenty-four fights during my time. I had had seven fights then. I have, both before and after this particular fight, hit somebody else a similar blow. It was a knockout blow sixteen times, sixteen knockouts out of twenty-four fights. This was the only man that has died as the result of these knockouts. The other fifteen received a similar blow, and in a few minutes were revived. This fight was no different from any of the others I engaged in. The blow was no different from any of the others, just an ordinary give and take affair. We were both in the ring to hit and get hit. All I know is that I struck this blow that I have used in all my fights, and it knocked him out." The doctor's testimony as to the location of the blow was to the same effect. It is undisputed that the deceased when he entered the prize-ring was in good health, in splendid physical condition. The policy provides for double indemnity where the insured "has sustained bodily injury solely through external, violent and accidental means, . . resulting in the death of the insured." Under this provision the double indemnity is payable only when the act which causes the injury which results in the death of the insured is external, violent and accidental. *Continental Casualty Co.* v. *Pittman,* 145 *Ga.* 641 (89 S. E. 716) ; *Fulton* v. *Metropolitan Casualty Ins. Co.,* 19 *Ga. App.* 127 (91 S. E. 228). Such an act is accidental when it is unforeseen, unexpected, or unusual. The rule as taken from United States Mutual Accident Asso. *v.* Barry, 131 U. S. 100 (9 Sup. Ct. 755, 33 L. ed. 60), and quoted with approval in *Atlanta Accident Asso.* v. *Alexander,* 104 *Ga.* 709 (30 S. E. 939), is that "if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it can not be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs which produces the injury, then the injury has resulted through accidental means." *Johnson* v. *Ætna Life Ins. Company,* 24 *Ga. App.* 431 (101 S. E. 134) ; *Fulton* v. *Metropolitan Casualty Ins. Co.,* 19 *Ga. App.* 127 (91 S. E. 228). If the blow which the deceased received in the prize-fight and which caused his injury was unforeseen, unexpected, or unusual, it was an "accidental means" causing the injury in the sense of the policy. If, however, the blow was not unforeseen, not un-

expected, or not unusual it was not an "accidental means" in the sense of the policy, and the injury received from the blow is not an injury received through accidental means, and the double indemnity provided for in the policy was not payable for a death resulting from such injury.

It not only appears from the undisputed evidence, but it is a matter of common knowledge, that the object of two men engaged in a prize-fight is to injure each other although there may be no intention to kill. .The possibility of injury is within the contemplation of both. The deceased, when he engaged in the bout, necessarily knew and foresaw that his opponent might strike him a blow which would cause an injury such as that which he received. Where the blow is regular and in accordance with the rules of the game, it necessarily must have been foreseen, must have been expected and was usual. These conditions entirely relieve the blow from any element of accident. In *Johnson* v. *Ætna Life Ins. Co.,* supra, where the insured who was apparently in good health ruptured a blood-vessel while changing an automobile tire, a verdict for the insurance company was upheld, the court holding that it was incumbent upon the plaintiff to show that "in the act which preceded the injury alleged to have caused his death something unforeseen, unexpected, or unusual occurred." In *Travelers Insurance Co.* v. *Wyness,* 107 *Ga.* 584, 589 (34 S. E. 113), the court approved the proposition, as settled by the weight of authority, that where one person injures another, and the injury is not the result of misconduct or participation of the injured party, but is unforeseen by him, it is accidental as to him, although it may be inflicted intentionally by the other party. It follows that if the injured party does participate in the activity which results in the injury, and the latter could reasonably have been foreseen by him as a possible result of the activity, the thing is not an accident. In the present case it does not appear that in the act which caused the injury there was anything which the insured had not foreseen or expected and which was not unusual. Therefore the injury did not fall within the provisions of the policy. See *Cobb* v. *Preferred Mutual Accident Asso.,* 96 *Ga.* 818 (22 S. E. 976) ; Pope *v.* Prudential Ins. Co., 29 Fed. (2d) 185 ; Lincoln National Life Ins. Co. *v.* Erickson, 42 Fed. (2d) 997 ; Caldwell *v.* Travelers Insurance Co., 305 Mo. 619 (267 S. W. 907, 39 A. L. R. 56) ; Lehman *v.*

Great Western Accident Asso., 155 Iowa, 737 (133 N. W. 752, 42 L. R. A. (N. S.) 562). The situation in this case is not to be analogized to an accident which might possibly occur in a football, baseball, or other game where the object and purpose is not to hurt or injure an opponent, but where such deliberate purpose is sternly prohibited. In a prize-fight the very objective sought is to so hammer, beat down, hurt, injure, and incapacitate a strong and healthy opponent that he becomes unable to rise from the floor or to stand upon his feet in possession of his faculties. A prize-fighter who purposely subjects himself to such extreme punishment, unless he can avoid same by first incapacitating his opponent, must be taken to have assumed the risk naturally incident to such voluntary exposure. If he is beaten down to insensibility, and yet thereafter recovers, he is fortunate; whereas if the extreme physical punishment to which he subjects himself results in the loss of his life it can not properly be termed an accident, within the meaning of a policy of accident insurance, merely because it was the desire of his opponent, not to take his life, but, in self-defense, to disable him by beating him up, knocking him down, and knocking him out.

In New York Life Insurance Co. v. Gustafson, 55 Fed. (2d) 236 (82 A. L. R. 729, 731), the United States Circuit Court of Appeals held that the death of a professional boxer from a broken neck, caused from a violent blow on the chin while he was lawfully engaged in a boxing match, was effected by accidental means. The court expressly predicated its ruling upon the proposition that the death was accidental. In the opinion it was said: "While the insurance company by its policy provided for certain prohibitive risks, it did not forbid boxing, and therefore it must be deemed to have had in view that there were many sports from which death might very occasionally and quite accidentally result. In that regard the trial judge said, and we agree therewith: 'Therefore we conclude, that, the insurance company having definitely determined those acts and occupations which are not covered by the policy, accidental death resulting from an injury received in the course of all other activities and occupations must come under the risks assumed by the company. . . Death in a boxing bout as well as in a football game is unusual and unexpected. No man has ordinarily any cause or reasonable ground to anticipate that when he

engages in any of these games, death will result. If it does, it may truly be said to be both unexpected and not intended by any party to the game, and therefore accidental.' That the man's death resulted from a boxing blow is a fact; that a man enters such a contest knowing that his opponent will inflict the hardest blows possible, that death occasionally comes in a boxing match, all are facts. But that such facts make death in such a match non-accidental by no means follows, any more than every death in sports —wrestling, fencing, baseball, football—is non-accidental because of the fact that it occasionally happens. Accidental has in it the element of improbable, unusual, by chance. In the present case, while there was the remote possibility of death, there was no probability, and reflection will show that the reason death came in this particular case was because a large number of independent, unconnected factors chanced to combine and co-operate to make this blow break the neck of the deceased." Whether the *death* was *accidental* is not the test under this clause in the policy, as is held by the Georgia courts. As this provision of the policy is construed by the Georgia courts, the accidental happening must inhere in the *act* which causes the physical injury which results in the death of the insured. In *Continental Casualty Co.* v. *Pittman,* supra, the Supreme Court held that an injury caused from sunstroke which resulted in the death of the insured was not an injury caused from "external, violent, and accidental means" as provided in the policy, and that it did not appear that the sunstroke was due to "accidental means." In *Fulton* v. *Metropolitan Casualty Ins. Co.,* 19 *Ga. App.* 127 (91 S. E. 228), it was held that "accidental means" in the sense of the policy must be an act which precedes the injury and which causes the injury, and must be an act in which "something unforeseen, unexpected, or unusual occurred." In McQueen *v.* Prudential Ins. Co., 143 Misc. 682 (256 N. Y. Supp. 906), in which it was held that "whether death from general septicemia developing after injured suffered rupture of blood-vessel in nose while engaged in friendly boxing bout was due to 'accidental means' within policy," is a question for determination by a jury, there was evidence that the injury might have been caused from a germ infection entering through the rupture. The court, in the opinion stated, "There was proof from which the jury might have found that the germ causing the infection entered

through the rupture in the nose. While the insured's participation in the boxing bout was intentional, there appears to be a question of fact as to whether the injury was one ordinarily to be expected from, or attendant upon, indulgence in such exercise, and, even if some injury to the nose might have been expected, the dire result which followed was so out of proportion to its trivial cause that whether it was due to accidental means was for the jury." In that case the court recognized that there must have been something unusual, unexpected, or unforeseen in the act which preceded and caused the injury.

The verdict for the plaintiff was not supported by the evidence, but on the contrary the evidence demanded a verdict for the defendant. It is unnecessary to pass upon the assignments of error which relate only to exceptions to the charge of the court, and to matters arising out of the defendant's plea of accord and satisfaction. The court did not err in overruling the general demurrer to the petition, but did err in overruling the motion for new trial.

*Judgment reversed. Jenkins, P. J., concurs. Sutton, J., dissents.*