33444, 33445.  THOMPSON *v.* PRUDENTIAL INSURANCE COMPANY OF AMERICA; and *vice versa.*

DECIDED JUNE 28, 1951.

*James D. Childs, Guy Parker, Noah J. Stone,* for plaintiff.

*W. K. Meadow, Spalding, Sibley, Troutman & Kelley,* for defendant.

MacIntyre, P. J. The factor which will be determinative of the question of whether the trial court erred in directing a verdict for the defendant in this case is the interpretation to be placed upon the term "accidental means" as used in the double-indemnity provision of insurance policies providing for such payment where death results "independently of all other causes, from bodily injuries caused solely by external, violent, and accidental means."

A consideration of the literally hundreds of cases where the courts have sought to construe such provisions in policies of insurance and interpret "accidental means" brings one to the sharp realization of the great truth in Justice Cardozo's warning, "The attempted distinction between accidental results and accidental means will plunge this branch of the law into a Serbonian Bog." The cases are in irreconcilable conflict. For a few of the cases, see 7 A.L.R. 1131; 14 A.L.R. 788, 35 A.L.R. 1191; 42 A.L.R. 243; 45 A.L.R. 1528; 71 A.L.R. 1437; 111 A.L.R. 628; 5 L.R.A. (N.S.) 657; L.R.A. 1915E, 127; L.R.A. 1916B, 1021; Ann. Cas. 1916 C, 579; and Ann. Cas. 1917 A, 88.

In Aetna Life Insurance Co. *v.* Kent, 73 Fed. 2d, 685, 686, Judge Moorman, in an effort, evidently, to bring some order out of chaos, has this to say: "There can be no doubt that there is much confusion in these decisions. Analyses can be of no assistance in harmonizing them or formulating a body of criteria by which all of them can be justified. Most of them rely upon United States Mutual Accident Ass'n. *v.* Barry, 131 U. S. 100 (9 S. Ct. 755, 33 L. ed. 60). Some of the courts relying upon this case seem to have construed 'accidental means' as including an intentional act effecting an unusual or unexpected consequence or result. Among the earliest of these decisions, often cited, is Western Commercial Traveler's Ass'n *v.* Smith (C. C. A.) 85 F. 401, 40 L.R.A. 653. Other courts have drawn a distinction between accidental injury or death and injury or death resulting from accidental means, by looking in the former case to the result, and in the latter to the means. Landress *v.* Phoenix Ins. Co., 291 U. S. 491, 54 S. Ct. 461, 78 L. ed. 934, 90 A.L.R. 1382, affirming the decision of this court, 65 F. (2d) 232, is an authoritative and conclusive approval of this distinction. The courts accepting it have generally held that where an injury is the result of a voluntary act, in the performance of which there was a 'slip or mishap,' it is to be regarded as having been caused by accidental means. Cf. Maryland Casualty Co. *v.* Massey, 38 F. (2d) 724 (6 C. C. A.). Many courts have held too, that the means are accidental if the doer of the voluntary act was ignorant of a material fact or circumstance which would have caused him, had he known it, to do the act differently or not do it at all. Cf. Pope *v.* Prudential Ins. Co., 29 F. (2d) 185 (6 C. C. A.). It has been said, though, that the doer of a voluntary act is chargeable with knowledge of the obvious and that which is usual or to be expected, and although he was ignorant of a material fact or circumstance, if he might have known of it by the exercise of ordinary care it cannot be relied upon to effect accidental means. . . In their application there will be cases, no doubt, in which the courts will feel that the facts and circumstances require a finding that the unknown elements were so clearly without the realm of reasonable anticipation as to exclude an hypothesis for accidental means."

"An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual design, or it falls under the maxim that every man must be held to intend the natural and probable consequence of his deeds." Western Commercial Traveler's Ass'n v. Smith, supra. This latter rule, while perhaps not always so cogently expressed, is, in the final analysis, the rule which has been applied in Georgia in that line of cases where it is held: "In order for a plaintiff to recover under a double-indemnity provision of an insurance policy for death resulting, independently of all other causes, from bodily injuries caused solely by external, violent, and accidental means, it is incumbent upon him to show that in the act which preceded the injury alleged to have caused the death of the insured something 'unforeseen, unexpected, or unusual occurred.' *Fulton* v. *Metropolitan Insurance Co.*, 19 *Ga. App.* 127 (2) (91 S. E. 228); *Johnson* v. *Aetna Life Insurance Co.*, 24 *Ga. App.* 431 (101 S. E. 134); *Continental Casualty Co.* v. *Rucker*, 50 *Ga. App.* 694, 695 (179 S. E. 269); *American National Insurance Co.* v. *Chappelear*, 51 *Ga. App.* 826, 829 (181 S. E. 808); *Commercial Casualty Insurance Co.* v. *Mathews*, 57 *Ga. App.* 446, 452 (195 S. E. 887); *Atlanta Accident Asso.* v. *Alexander*, 104 *Ga.* 709 (30 S. E. 939); United States Mutual Accident Asso. v. Barry, 131 U. S. 100 (9 Sup. Ct. 755, 33 L. ed. 60)." *Green* v. *Metropolitan Life Insurance Co.*, 67 *Ga. App.* 520, 525 (21 S. E. 2d, 465); *Metropolitan Life Insurance Co.* v. *Anglin*, 66 *Ga. App.* 660 (19 S. E. 2d, 171).

The testimony of the persons present at the time of the insured's death was for all practical purposes essentially the same on the question of how the insured met his death. Jerry Lee Bishop testified in part: "The night before his death Robert took a gun out and he was showing us how he could put one bullet in it and spin the cylinder around and make it hit on the bottom. He did that five or six times that night and the bullet always landed on the bottom. He pulled the trigger, but the bullet didn't fire. I did not pull the trigger that night. He just showed it to me after he had twisted it. I saw the bullet in the cylinder and it was on the very bottom. That was the night before his death. . . [The night of his death] Robert got

the gun out and asked me if I wanted to play 'Russian Roulette' and I said I did. He got the gun and took all the bullets out except one and twisted the cylinder around and handed the gun to me. I looked at it and said, 'Let's put it up. Don't play with it.' Robert said, 'All right, I will do it first.' He took the gun and put it to his head and fired it. He . . [had taken] the cartridges out and put them on the counter there. There was just one left in the cylinder. He spun the cylinder and handed me the gun to me and I took it in my hand and looked at it. When I looked at it the bullet was next to the top. I didn't tell Robert that it was next to the top. I didn't think anything would happen. I didn't think the gun would fire; [I thought] that the bullet would have to be on top [to fire]. When I saw the bullet it lacked one space of being even with the barrel, but Robert Thompson never saw that. He took the pistol and pointed it at his head and pulled the trigger. When Robert took the bullets out of the pistol that night and spun it, that was the same thing he did the night before. He didn't do it but one time the night of his death. The night before he did it five or six times. The gun did not fire the night before. . . As I testified on direct examination, Robert didn't see the bullet. I know he didn't see it because he didn't look at it. He just took the pistol out of my hand and put it to his head. He was looking at me when he took the gun out of my hand and said that he would do it first. He put the pistol to his own head and pulled the trigger. That was the shot that killed him. That was the way he got killed. That is the way you play 'Russian Roulette' according to the rules of the game and according to my understanding of the way you play it." As we have said, the testimony of the other witnesses present at the time of the insured was to similar effect.

Where one places a loaded pistol to his head and voluntarily pulls the trigger, knowing the gun to be loaded and lethal, nothing more appearing, it is unquestionably no accident that his action results in his injury or death, nor can his death or injury be said to have been effected by accidental means. So too, where one engages in a game of Russian Roulette in which all but one of the cartridges are removed from the cylinder of a revolver, the cylinder is spun, the revolver is placed by the par-

ticipant to his head, and the trigger is voluntarily pulled without ascertaining the position of the cartridge in the chamber in its relation to the firing mechanism, and it occurs that, when the trigger is pulled, the gun fires and kills or injures the participant, his death or injury is no less intentional than had the gun been fully loaded, and his death or injury can not be said to have been the result of accident, or effected by accidental means.' In such a case, it will be presumed that the participant intended that he should be killed or injured should fate stop the cartridge in the spinning cylinder in firing position. One engaging in such a bizarre pastime with a lethal weapon, if he be compos mentis, knows that he is courting death or severe injury, and will be held to have intended such obvious, and well-known results, if he is killed or injured. The insured, so far as the evidence shows, was not "play-acting" or engaging in a psuedo game of Russian Roulette. The cartridges were not blanks. He placed a "live" cartridge in the cylinder of the revolver and made no effort to ascertain the position in which the cartridge stopped in relation to the firing mechanism, before pulling the trigger. Such reckless abandon and exposure to a known and obvious danger can not be said to have been accidental, nor can it be said that his death was effected by accidental means. The most that can be said for such a participant is that he hoped the cartridge would not stop in the firing position when his turn to pull the trigger came. Under these circumstances we think the plaintiff failed to establish that the insured's death was effected by accidental means within the meaning of that term in the policies of insurance and it follows that the trial court did not err in directing a verdict for the defendant, nor in overruling the motion for a new trial.

*Judgment affirmed on the main bill of exceptions; cross-bill dismissed. Gardner and Townsend, JJ., concur.*