## 40507. LIFE INSURANCE COMPANY OF GEORGIA
## v. WILLIAMS.

DECIDED FEBRUARY 7, 1964—REHEARING DENIED
MARCH 5, 1964.

*Harris, Chance, McCracken & Harrison, J. Roy McCracken,* for plaintiff in error.

*Abbott & Abbott, James C. Abbott,* contra.

HALL, Judge. The following evidence, in summary, was developed at the trial: The witness Tommy Usry testified that he was a neighbor living about a half mile down the road from the deceased insured, Willie Ed Williams, and had been his friend for a year or two. They fished often and worked together in farm labor. Tommy was 14 and Willie Ed was 18 or 19 when he was killed. On the day Willie Ed was killed he and another boy came to Tommy's house. While the three were waiting for Tommy's sister to return to be asked if Tommy could go fishing, Tommy and Willie Ed were playfully scuffling over Tommy's knife and Tommy picked up the rifle, which was

usually kept unloaded, and "not seeing was there anything in the rifle," pointed it toward Willie Ed. Willie Ed started making jokes and then pulled the rifle out of Tommy's hand and pointed it towards his own head and jokingly said "I eat bullets" and "the next thing I [Tommy] knowed, I heard the gun fire and he fell to the floor." On cross examination Tommy stated he didn't remember whether or not Willie Ed had his fingers on the trigger or pulled the trigger when the gun went off, and did not remember whether or not he gave the following testimony at the coroner's hearing, but he could have: "He said he eats bullets and pointed the rifle toward his mouth and head and the rifle went off. He had his finger on the trigger when it went off." Tommy testified that he did not remember making the following statement two months after Willie Ed's death, but admitted making the statement: "[Willie Ed] got the gun and put the barrel towards his head and said he ate bullets. He pulled the trigger and shot himself. I have never told anyone that I pulled the trigger of this gun. Willie Ed Williams pulled the trigger and my hand was not on the gun when the trigger was pulled." This statement, which was in writing and signed by Tommy, was introduced in evidence, as was the report of the coroner's hearing. Tommy, as well as other witnesses, testified that Willie Ed was a happy, playful boy.

Georgia applies the generally accepted rule that to recover for death caused solely by "external, violent, and accidental means" it is incumbent upon the beneficiary of an insurance policy to show that in the act which preceded the death something "unforeseen, unexpected, or unusual occurred." *Thompson v. Prudential Ins. Co.*, 84 Ga. App. 214 (66 SE2d 119); Vance, Insurance (3d Ed.) 947, § 181.

One of the few cases of an insured who pointed a gun at himself not intending to shoot himself is *Thompson v. Prudential Ins. Co.*, 84 Ga. App. 214, supra, upon which the defendant principally relies. In that case this court upheld a directed verdict for the defendant upon the following evidence: The insured 5 or 6 times the night before his death had successfully shown others how he could put one bullet in his gun and spin

the cylinder around and make the bullet land on the bottom, and then pull the trigger without firing the bullet. On the night of his death the insured removed all the bullets from the gun but one, spun the cylinder just as he had the night before, and invited a witness to play "Russian Roulette." Then he put the pistol to his head and pulled the trigger. The gun fired and killed him. In the opinion the court reasoned that the insured had engaged in a game of chance with death and pulled the trigger voluntarily without ascertaining the position, in relation to the firing mechanism, of the cartridge which he knew to be in the chamber; his death, therefore, was "no less intentional than had the gun been fully loaded and . . . cannot be said to have been the result of accident, or effected by accidental means." "In such a case, it will be presumed that the participant intended that he should be killed or injured should fate stop the cartridge in the spinning cylinder in firing position. One engaging in such a bizarre pastime with a lethal weapon, if he be compos mentis, knows that he is courting death or severe injury, and will be held to have intended such obvious and well-known results, if he is killed or injured."

With facts similar but somewhat different other courts have held a jury question was presented as to whether the death resulted from accidental means. Aetna Life Ins. Co. v. Kent, 73 F2d 685 (6th Cir. 1934); New York Life Ins. Co. v. Harrington, 299 F2d 803 (9th Cir. 1962).

Recovery for death by accidental means has been denied when the insured was killed as a result of an altercation which he wrongfully provoked and from which he should have foreseen injury or death to himself. *Green v. Metropolitan Life Ins. Co.,* 67 Ga. App. 520 (21 SE2d 465); *Metropolitan Life Ins. Co. v. Anglin,* 66 Ga. App. 660 (19 SE2d 171); *Carolina Life Ins. Co. v. Young,* 99 Ga. App. 848 (110 SE2d 67). But it has been held, when the insured had previously provoked altercations with deadly weapons with the same adversary and without fatality, there was a jury question whether the consequences of the self-provoked altercation that resulted in death were both natural and probable and foreseeable to the insured. *Riggins v. Equitable Life Assurance Society,* 64 Ga. App. 834

(14 SE2d 182); *Life &c. Ins. Co. v. Hulsey*, 109 Ga. App. 15 (134 SE2d 880).

In the present case it was for the jury to evaluate the testimony given by Tommy Usry at the trial and his previous statements that were introduced in evidence. *Code* §§ 38-107, 38-1805, 38-1806; *Williams v. State*, 69 Ga. 11, 34; *Huff v. State*, 104 Ga. 521, 524 (30 SE 808). The conflicting evidence as to whether or not the insured had his finger on the trigger and whether or not he pulled the trigger would not require a finding that he did either. The evidence would justify the inference that the insured believed that the rifle was not loaded. All the facts and circumstances in evidence did not as a matter of law demand a finding that the insured should have foreseen the consequences of his acts. Accord *Riggins v. Equitable Life Assurance Society*, 64 Ga. App. 834, supra; *Life &c. Ins. Co. v. Hulsey*, 109 Ga. App. 15, supra. In these respects this case is unlike the *Thompson* case, supra, where the insured knew that the gun was loaded and deliberately, according to the spirit of the game of Russian Roulette, did not attempt to predetermine whether the gun would fire when he next pulled the trigger. And in the present case it cannot be presumed as a matter of law that the insured took a known risk with the intention that he be killed should fate turn against him.

The trial court did not err in overruling the defendant's motion for new trial.

*Judgment affirmed. Nichols, P. J., and Russell, J., concur.*