### 47354, 47355.   SEABOLT v. CHEESBOROUGH
(two cases).

CLARK, Judge. Bang! went the rifle as the hunter shot at a wild turkey. The elusive bird was missed, the velocity of the bullet then speeding it through the trunk of a small tree from which fragments of the shattered projectile ricocheted and hit two other nimrods who were themselves in the underbrush and previously unseen by the shooter. Thus was provided the setting for this case of first impression on the Georgia law applicable to a sport so popular in our State that in the last fiscal twelve-months period our Game and Fish Commission issued 314,720

resident and 10,918 nonresident hunting licenses.[1]

During the legal turkey hunting season two brothers, J. T. and R. L. Seabolt, arrived around 6:15 a.m. in the hunting area in McDuffie County and began to wend their way along Hart Creek into the woods. As they followed the creek searching for their quarry and sounding their yelpers (female turkeys yelp while males gobble) they stopped three different times, remaining at each location approximately 15 or 20 minutes, all to no avail. They had proceeded about 2½ miles into the forest when they heard turkeys so they halted and took semi-reclining positions on the sloping bank of Hart Creek from which they could see through an opening on the opposite bank. From this position they could not be seen by the hunted target but could immediately arise to assume a shooting position when gobblers were sighted. Until this time they had seen neither game nor other hunters although they had previously heard one shot fired in the distance.

Earlier, from another direction, Cheesborough, an experienced hunter who had on occasions served as an instructor in hunting safety[2], together with a companion, had entered another portion of the hunting area. Separating but maintaining communication through a walkie-talkie, they arranged a meeting place at the creek bank. (Only the necromancy of a haruspex could have prognosticated this was destined as the locale for a fateful rendezvous where the Seabolt brothers would sustain bodily wounds and Cheesborough end up unhappily as a defendant in

---

[1]Contrasted with 539,037 resident and 20,185 nonresident fishing licenses which are limited to fresh water as none are required for salt water areas.

[2]A State Game and Fish Commission study for the past five years discloses reports of 110 hunting accidents of which 41 were fatalities. Weapons were involved in 109 of these incidents, the other having occurred when a hunter fell from a tree stand.

these lawsuits.) En route to his destiny Cheesborough shot and killed a scrawny dog that was chasing a deer, this undoubtedly being the shot that had been heard by the Seabolt Brothers. Sounding his turkey caller and keeping himself hidden from the known keen sight of the birds, he saw a gobbler about 45 yards away walking toward the creek. Unknown and unseen by him the Seabolts were in the underbrush across the bank between him and his quarry. Using a .222 caliber rifle which carried a missile traveling 3,000 feet per second, he took careful aim and fired at the gobbler then about 35 yards away and walking toward the creek. The projectile went completely through the trunk of a small tree with fragments exploding to hit and wound both Seabolts. Upon discovering the calamity Cheesborough summoned his companion and they jeeped the bleeding brothers to the hospital.

Fortunately, although seriously injured, both brothers recovered. They filed these suits for their damages based on alleged negligence. The defendant's answers denied fault, averred plaintiffs had failed to exercise the required degree of ordinary care for their own safety, that their negligence was the sole and proximate cause, and that the incident and resulting injuries constituted "an accident within the meaning of the law."

The two suits were joined for trial.[3] There was a contradiction between the parties as to the visibility situation. The Seabolts testified that upon being struck they sat up and could see the defendant about 45 steps away and they could see him get up. Defendant testified the undergrowth prevented his seeing them. In this he was supported by the county sheriff who investigated[4] the

---

[3] The transcript discloses the trial judge instructed the jury to have Coca-Colas during their recess. This could happen only in the Empire State of the South.

[4] Typical of our State was his remembering the date of his investigation as being "The Saturday Georgia Tech played Georgia."

incident and described the vegetation. The jury returned verdicts for the defendant. After their motions for new trial were overruled these appeals were brought. In addition to the general grounds of the new trial motions the enumerations of error submit the trial judge erred in refusing to include three specific requests to charge, and in charging on the law of accident, and in failing to charge comparative negligence.

1. One of plaintiffs' requests contained the following language: "A high degree of care is necessary in the use or manipulation of loaded weapons, and a failure to exercise a degree of care proportionate to the potential danger under all of the circumstances revealed to you by the evidence, would be a lack of ordinary care and would constitute negligence on the part of the user." (T. 61.) This language is analogous to that held erroneous in *Wright v. Dilbeck*, 122 Ga. App. 214, 228 (176 SE2d 715), where the judge instructed "that where the view or hearing of a motorist approaching a railroad crossing is obstructed, he is under the duty of using *greater care* and prudence in looking and listening for approaching trains than where there is no obstruction" and "if you find that obstructions hindered the view of Mr. Wright in his approach up until he reached the principal point of danger, located on the track, the precautions required of him in order to meet the standard of ordinary care *increased* as he approached the danger point." (Emphasis supplied.) This charge was held to be error as it invaded the province of the jury. "It is for the jury to determine from all the facts and circumstances the precautions necessary to meet the standard of ordinary care. It is for the jury to determine whether specific stated circumstances require the exercise of additional care and prudence, and it is error for the trial judge to instruct the jury that under certain stated circumstances, greater care and prudence is required in order to meet the standard set by the law." *Wright v. Dilbeck*, supra, p. 229. The trial court properly refused to give this charge.

2. Likewise, the trial judge recognized it would have been erroneous as invading the province of the jury to charge that request which included this language: "In the exercise of ordinary care, a hunter . . . is bound to anticipate the presence of others who might likewise be engaged in the sport of hunting, and is likewise under a duty to distinguish between hunted animals and human beings before discharging his weapon." (T. 62.)

"A trial judge may not tell a jury what acts would or would not constitute negligence unless the acts have been declared by statute to be negligence. *Savannah F. & W. R. Co. v. Evans,* 115 Ga. 315, 316 (41 SE 631, 90 ASR 116); *Atlanta & W. P. R. Co. v. Hudson,* 123 Ga. 108, 109 (51 SE 29); *Watson v. Riggs,* 79 Ga. App. 784, 785 (54 SE2d 323). It would have been better practice to charge fully the general law on the applicable standard of care without suggesting particular acts which might have been required of plaintiff [defendant in the case sub judice] to conform with that standard." *Gates v. Southern R. Co.,* 118 Ga. App. 201, 204 (162 SE2d 893). In accord, *Etheridge Motors, Inc. v. Haynie,* 107 Ga. App. 674 (1) (131 SE2d 212); *Hunt v. Pollard,* 55 Ga. App. 423, 427 (190 SE 71).

Moreover, such request was not adjusted to the evidence. Defendant testified he aimed at a turkey, not plaintiffs. Plaintiffs themselves acknowledged they were not making any movements. "The trial court did not err in refusing to charge the jury a request to charge that was not perfectly apt and precisely adjusted to the case. [Cit.]" *Crafton v. Livingston,* 114 Ga. App. 161 (5) (150 SE2d 371); *Slaughter v. Linder,* 122 Ga. App. 144, 146 (176 SE2d 450) and cases cited therein.

3. A third request which was properly rejected sought on the basis of an inherently dangerous instrumentality to impose a greater degree of care than is required by law. The trial judge charged the general law that "Ordinary care and diligence is that care and diligence which every prudent man takes of his own property of a similar nature or that care and diligence which every prudent man

would exercise under similar circumstances and like surroundings." In a comprehensive article captioned "Hunter's civil liability for unintentionally shooting another person" in 26 ALR3d 561, 567, the author says: "Although the courts have used various forms of judicial expression, it is clear that the standard of care generally imposed upon a hunter is the duty to exercise ordinary care commensurate with the peculiar circumstances of each case." The full charge by the trial judge here was in accord with this view. See also Hubbard v. United States, 295 FSupp. 524 (1969).

4. The contention that the court improperly charged the law on accident is without merit. Not only did the answer specifically plead such contention, but it was authorized by the evidence. "There was evidence to sustain a finding by the jury that neither the plaintiff nor the defendant was lacking in ordinary care. This being so, the theory of accident was involved in the case, and it was not error to give an instruction thereon." *Brown v. Mayor &c. of Athens,* 47 Ga. App. 820 (3) (171 SE 730). In accord, *Holiday v. Mayor &c. of Athens,* 10 Ga. App. 709 (5, 6) (74 SE 67), and *Firestone Tire & Rubber Co. v. Jackson Transp. Co.,* 126 Ga. App. 471 (191 SE2d 110).

"In Georgia law, it [accident] means, in connection with personal injury cases such as this, an injury which occurs without being caused by either the negligence of the plaintiff or of the defendant. The idea of accident excludes responsibility for the cause of the injury. If you find from the preponderance of evidence that the plaintiff's damages, if any, were caused by accident as I have defined the word, that is, occurred without any lack of ordinary care and diligence on the part of the plaintiff or the defendant, then the plaintiff could not recover damages . . . The plaintiff contends that the question of accident is not involved because the defendant's acts were intentional. While it is true that the defendant's acts were intentional, this would not preclude a finding that the injury was the result of an accident. Where a person,

while using reasonable care, commits an intentional act which causes an unexpected injury to another person, the injury is the result of an accident. *Johnson v. National Life &c. Co.,* 92 Ga. App. 818, 819 (90 SE2d 36)." *Caldwell v. Knight,* 94 Ga. App. 827, 828 (96 SE2d 331).

5. Although appellants have enumerated as error failure by the trial judge to include a charge on comparative negligence, it is acknowledged this omission was not called to the attention of the trial court in compliance with the provisions of *Code Ann.* § 70-207. It is urged upon this court to exercise its right under subparagraph (c) of that Code Section to "consider and review erroneous charges where there has been a substantial error in the charge which was harmful as a matter of law, regardless of whether objection was made hereunder or not." We should hesitate to exercise this right "unless it appears that a gross injustice is about to result or has resulted, directly attributable to the alleged error." *Nathan v. Duncan,* 113 Ga. App. 630 (6) (149 SE2d 383). "Instances where the charge will be found ground for reversal under subsection (c) are likely to be very, very rare." Id., p. 638. This exception should not be applied in the instant case. See *Newcomb v. Pattillo,* 119 Ga. App. 495 (3) (167 SE2d 665).

In *Tabor v. Fowler,* 119 Ga. App. 259 (167 SE2d 220) and *Brown v. Brown,* 222 Ga. 446 (150 SE2d 615) the prerogative was exercised because of the erroneous presentation of the sole issue for decision in those cases. That does not exist here where there is considerable doubt under the pleadings and evidence as to there being any issue of comparative negligence.

In *Crafton v. Livingston,* 114 Ga. App. 161 (150 SE2d 371) relied upon by the appellants there was a specific request for the judge to charge the jury on the application of the comparative negligence rule. No such request was made in the case sub judice.

6. The court did not err in overruling a motion for new trial on general grounds. "After a verdict, the evidence is

(Emphasis supplied.) If there were any doubt before of the court's right to prohibit leading questions, this strong language should completely remove that doubt. Is there any suggestion here, or any reason to believe, the trial judge is more limited in his discretion under a protective order than in the trial of cases under the general rules of evidence as to examination of witnesses, and specifically as is set forth in *Code* § 38-1706?

Suppose when this case is returned to the trial court, the judge elects to substitute a new order (which he has the discretion to do) to the effect that the depositions *not be taken. Code Ann.* § 81A-130 (b) grants this authority. Would the defendants be better off? Or suppose he orders depositions to be taken on interrogatories only? Would this benefit the defendants? The third question must necessarily be answered in the affirmative.

(4) Finally, may the opposite party participate in the deposition hearing, by asking questions of the witness, or must he give a new notice and pay the expense thereof?

*Code Ann.* § 81A-126 (a) and (b) clearly answers this question stating that it will be done "in the same manner that witnesses may be compelled to appear and testify in court" and "examination and cross examination of deponents may proceed as permitted at the trial under the rules of evidence." To require a new notice would create needless expense, consume additional time, would reverse the practice of examination and cross examination of witnesses, and would lend itself to annoyance and harassment of witnesses. Of course, in trials in the courts of this State, when a witness is called to testify, the opposing party has the right to cross examine the witness then and there. *Code* § 38-1704; *First Nat. Bank of Birmingham v. Carmichael,* 198 Ga. 309, 314 (31 SE2d 811). The same rule applies in depositions and it would be a travesty on justice to require the opposing party to remain silent, ask no questions, and then have to give a new notice and pay the expense of cross examining the witness who has been called for direct examination.

The same rule applies here which governs the taking of depositions by written interrogatories under *Code Ann.* § 81A-131 (a) which provides that within 10 days from service of the interrogatories, the opposing party may serve cross interrogatories to be answered in *this same hearing,* with no new notice.

I, therefore, respectfully dissent from the majority opinion in this case.

I am authorized to state that Chief Judge Bell and Judges Deen and Quillian join me in this dissent.