## 48350. JACKSON v. NATIONAL LIFE & ACCIDENT INSURANCE COMPANY.

Clark, Judge. Is a death from "acute narcotism, heroin," occurring "suddenly following an injection of narcotics" within the coverage of a life insurance policy providing benefits when there is a "death by accidental means"?

Plaintiff, mother of the insured, sued as beneficiary under three life insurance policies. Each of these policies carried the same language reading: "Upon receipt of due proof that the death of the insured resulted directly, and independently of all other causes, from bodily injuries effected solely through external, violent and accidental means, the Company will pay the additional benefit hereinafter defined . . ." The insured died following an injection of heroin which contained such a massive dose that the cause of death was stated in the autopsy report to be "sudden" and ascribed to "acute narcotism, heroin." The autopsy report of many needle marks on the insured's arms leaves no doubt that he had previously taken drugs.

After stipulating there was no issue of material fact both parties moved for summary judgment. Plaintiff's motion was denied and defendant's motion was granted. Plaintiff has taken this appeal.

As the Hon. Joel J. Fryer rendered an opinion which is in accordance with previous cases by the Supreme Court and our court we adopt that opinion. It reads as follows:

"I too believe that it is the understanding of the average policy-holder which is to be accepted as a court's guide to the meaning of words, with the help of the established rule that ambiguities and uncertainties are to be resolved against the insurance company. Landress v. Phoenix Ins. Co., 291 U. S. 491, 499 [54 SC 461, 90 ALR 1382, 78 LE 934].

"The insured's death may certainly have been an accident; but, I doubt that it was caused by 'accidental means.'

"Georgia makes the distinction between 'accident' and 'accidental means.' *Davison v. National Life &c. Co.,* 106 Ga. App. 187, 193 (126 SE2d 811); *Johnson v. National Life &c. Ins. Co.,* 92 Ga. App. 818 (90 SE2d 36); *Cobb v. Preferred Mutual Accident Assn.,* 96 Ga. 818 (22 SE 976); *Fulton v. Metropolitan Cas. Ins. Co.,* 19 Ga. App. 127 (2) (91 SE 228); *American National Ins. Co. v. Chappelear,* 51 Ga. App. 826 (2) (181 SE 808); and *Thompson v. Prudential Ins. Co.,* 84 Ga. App. 214 (66 SE2d 119). It must therefore appear that the insured's death arose by means used which were accidental. 'Where an unusual or unexpected result occurs, by reason of the doing of an intentional act, with no mischance, slip or mishap occurring in doing the act itself, the ensuing injury or death is not caused by accidental means.' 44 AmJur2d § 1221.

"Regrettably, in today's society with the number of people who use heroin, under the circumstances which they use it (i. e. dirty needles, dirty places, and dirty utensils) unable to adequately determine the strain of the substance used or appropriately measure the amount used, death is a common experience and the user may reasonably expect it. Death when it occurs can neither be 'unexpected,' 'unusual,' 'nor unforeseen.' *Johnson v. National Life &c. Ins. Co.,* supra."

Although this case is the first involving drug addiction overdose, we note that among the decisions cited by Judge Fryer the similarity of the facts in *Johnson v. National Life &c. Ins. Co.,* supra. There the insured died as a result of a penicillin injection with this court stating at page 820 that "The injection was the act which preceded the injury, and was intentionally done by the consent of the insured. This injection was not an unforeseen, unexpected, unusual, or unintentional act; therefore, the injury did not result from accidental means within the terms of the insurance policies." We must also note that *Thompson v. Prudential Ins. Co.,* supra, involved "Russian roulette." Indeed, the heroin user plays a form of Russian roulette substituting a needle for a pistol.

Appellant's exhaustive brief cites many cases from other jurisdictions. Generally they differ from our ruling herein because they have obliterated the distinction between "accidental injury" and "injuries from accidental means." See 52 ALR2d 1083 for annotation entitled "Death or injury resulting from insured's voluntary act in taking overdose of

medicine, drugs, or the like as caused by accident or accidental means."

*Judgment affirmed. Bell, C. J., Eberhardt, P. J., and Quillian, J., concur. Hall, P. J., and Deen, J., concur specially. Pannell, Evans and Stolz, JJ., dissent.*

ARGUED JULY 10, 1973 — DECIDED SEPTEMBER 27, 1973 — REHEARING DENIED NOVEMBER 8, 1973 — ■

*Lefkoff & Hanes, Joseph Lefkoff, Henry L. Young, George M. Fox,* for appellant.

*Alston, Miller & Gaines, R. Neal Batson, Ben F. Johnson, III,* for appellee.

HALL, Presiding Judge, concurring specially. I concur in the judgment of affirmance and in all that is said in the majority opinion except for its reliance on the case of *Johnson v. National Life &c. Ins. Co.,* 92 Ga. App. 818 (90 SE2d 36).

In my opinion the test of "accidental means" is determined by whether or not "the insured should have foreseen the consequences of his acts." *Life Ins. Co. of Ga. v. Williams,* 109 Ga. App. 264 (135 SE2d 925). I would not hold that death should have been foreseen as a result of taking penicillin administered by a physician; however, one who takes a massive dose of heroin should have foreseen that death could possibly result from this act.

I am authorized to state that Judge Deen concurs in this special concurrence.

EVANS, Judge, dissenting. Annie Jackson sued National Life & Accident Insurance Company for death benefits alleged to be due because of the death of her son, Eugene Jackson. It was alleged that he died on July 29, 1971, by accidental means, while insured by defendant, under a provision which covered "death by accidental means."

The defendant-insurer moved for summary judgment which was granted by the lower court; and the majority opinion here affirms that judgment.

The only two issues for determination in the motion for summary judgment are: A. Did the defendant prove beyond all reasonable doubt that Eugene Jackson's death was the result of suicide? B. Did the defendant remove each and every inference in the case that Eugene Jackson's demise was "death by accidental means"?

There is a paucity of evidence as to the circumstances surrounding the death of the deceased.

Eugene Jackson's body was discovered while still warm; and it was determined by medical authorities that he died suddenly following an injection of narcotics, and that his death resulted from "acute narcotism, heroin." A syringe was found at the scene and there were numerous old needle marks on his left arm; and there was evidence of a recent needle puncture wound which had a small amount of clotted blood on the surface. This is the sum-total of the evidence.

There was *absolutely no evidence* to show: 1. Whether Jackson was alone or not at the time of his death. 2. Whether he wrote any last message or "suicide note" indicating an intention to take his own life. 3. Whether he had ever threatened or mentioned the taking of his own life. 4. Whether or not he had enemies who would have taken his life if given the opportunity. 5. Whether or not he was despondent or melancholy during the days and hours immediately preceding his death. 6. Whether *Jackson* injected the heroin into his arm which caused death, or whether someone else did so.

The evidence was sufficient to show that at some time in the past Eugene Jackson had been a drug addict and that he died from an injection of heroin.

The law is well established that, in motions for summary judgment, the evidence must be construed most favorably towards the party opposing the motion, and "The burden is upon the moving party to establish the lack of a genuine issue of fact and the right to a judgment as a matter of law, and *any doubt as to the existence of such an issue is resolved against the movant.*" (Emphasis supplied.) *Holland v. Sanfax Corp.,* 106 Ga. App. 1, 4 (126 SE2d 442).

The above authority also holds (see p. 5): "The party opposing the motion is to be given the *benefit of all reasonable doubts* in determining whether a genuine issue exists and the trial court must give that party the *benefit of all favorable inferences* that may be drawn from the evidence." (Emphasis supplied).

Therefore, applying the principles of law enunciated in *Holland v. Sanfax,* supra, to the evidence — and the lack of evidence — in this case, the following inferences, favorable to the respondent, may be drawn, to wit: That Jackson was not alone at the time of his death; that some person other than Jackson made the injection of heroin into Jackson's arm; that the said party had no knowledge of the proper dosage, and took no precautions to learn the proper dosage; that he administered the drug with such a wilful and

wanton disregard for consequences as to amount to an intention to take human life; that Jackson did not advise him whatever as to the proper dosage and manner of injection; or if he did so advise him, the third party did not heed such instructions and proceeded with recklessness and wantonness; that Jackson did not know that an overdosage was being injected into his arm; that Jackson had never discussed or threatened to take his own life, and did not intend that result on this occasion; that he left no "suicide note"; that he did not know he was about to die; that he had not been melancholy or despondent during the days and hours leading up to his death.

There is not a word, syllable or scintilla of evidence in the case to negate or prove that death did not come about as set forth in the above "favorable inferences."

It may be argued that a reasonable inference arises from the evidence in this case that Jackson took his own life deliberately and intentionally. Conceding arguendo that such an inference could be drawn from the evidence, the case of *McCarty v. National Life &c. Ins. Co.,* 107 Ga. App. 178, 179 (129 SE2d 408), provides for such contingency in this language: "In other words, where more than one inference can be drawn from the evidence, the duty of solving the mystery should be placed upon the jury and not the trial judge."

It may be argued that plaintiff did not come forward with evidence to support the "favorable inferences" set forth above in her favor. Indeed she did not. But she did not have any burden of doing so. It was held in the case of *Metropolitan Life Ins. Co. v. Forsyth,* 122 Ga. App. 463, at 464 (177 SE2d 505), as follows: "To prevail on motion for summary judgment, the *movant has the burden* to produce evidence which conclusively eliminates all material issues in the case." (Citing *Colonial Stores v. Wilson,* 118 Ga. App. 120).

And *movant has the burden* of producing evidence which conclusively eliminates all material issues, even as to those issues on which opposing party would have to carry the burden on trial of case before a jury. *Herrington v. Stone Mountain Memorial Assn.,* 119 Ga. App. 658 (168 SE2d 633); *Wood v. Brunswick Pulp,* 119 Ga. App. 880 (169 SE2d 403); *Whisenhunt v. Allen Parker Co.,* 119 Ga. App. 813 (168 SE2d 827); *Sanfrantello v. Sears, Roebuck & Co.,* 118 Ga. App. 205 (163 SE2d 256).

If we have set forth a proper premise, and if the favorable inferences which we have set forth can be drawn from the evidence,

then this case should end, here and now.

Moving away from that point, let us assume arguendo that Jackson administered the drug himself. Surely he did not intend to kill himself! He left no suicide note; he was not despondent; he had not threatened to kill himself! The very strong inference arises — assuming Jackson himself administered the drug — that he expected the results to be as favorable as they had always been before, and that death would not ensue.

The law presumes that death is not the result of suicide. *Travelers Ins. Co. v. Sheppard,* 85 Ga. 751, 802 (12 SE 18).

The law further presumes accident rather than intentional injury. *Gaynor v. Travelers Ins. Co.,* 12 Ga. App. 601 (77 SE 1072).

It must be remembered that plaintiff had no burden whatever to produce any evidence as to what caused her son's death until the defendant *first pierced the pleadings and came forward with evidence to show that death was not accidental.* A somewhat similar case, where suit was brought against an insurance company because of accidental death, and where the insurer moved for summary judgment, is that of *Continental Assurance Co. v. Rothell,* 121 Ga. App. 868, 869 (176 SE2d 259); which states, "A defendant, on whom the burden of proof at the trial does not lie, and who on motion for summary judgment in its favor does not pierce the issues made by the pleadings, *or, under our present practice, disprove one or more of the essential elements of the plaintiff's case, does not carry the burden of such a movant merely because the evidence submitted fails to prove the plaintiff's case* even though it be wholly or in part the deposition or affidavit of the plaintiff itself. *There is no burden on the plaintiff to come forward with proof of his case until the evidence adduced prima facie disproves an essential element of plaintiff's theory of recovery.* 6 Moore's Federal Practice 2347, Par. 56.15 (3), n. 46; *Shadix v. Dowdney,* 117 Ga. App. 720 (162 SE2d 245). Accordingly, *the evidence adduced on the defendant's motion for summary judgment not affirmatively disclosing that the insured's death was other than accidental, the trial court did not err in denying the defendant's motion for summary judgment."* (Emphasis supplied.)

How stands the present case when measured by the principles above enunciated? Defendant has not come forward with proof that disproves plaintiff's case — nor with evidence "affirmatively disclosing that insured's death was other than accidental." As was held in *Rothell,* supra, defendant is not entitled to a summary judgment. Defendant simply proved that the deceased came to his

death because of an overdose of heroin. It did not prove who injected the heroin. It is just as likely that someone other than deceased made the injection this last time, because the same results did not ensue which had always followed the injection heretofore.

Thus, *defendant having the burden,* and the *presumption being against suicide,* defendant is not entitled to the grant of a summary judgment in its favor.

This court, quite recently, speaking through Judge Clark, has held that although *the act may be intentional, yet the injury may be the result of an accident,* and we quote from *Seabolt v. Cheesborough,* 127 Ga. App. 254, at 259 (193 SE2d 238) as follows: "The plaintiff contends that the question of accident is not involved because the defendant's acts were intentional. While it is true that the defendant's acts were intentional, this would not preclude a finding that the injury was the result of an accident. Where a person, while using reasonable care, commits an intentional act which causes an unexpected injury to another person, the injury is the result of an accident. *Johnson v. National Life &c. Co.,* 92 Ga. App. 818, 819 (90 SE2d 36). *Caldwell v. Knight,* 94 Ga. App. 827, 828 (96 SE2d 331)."

In Pitcher v. New York Life Ins. Co., 25 Cal. App. 3d 717, 725 (102 Cal. Rptr. 82) it was held that where a person self-administered an overdose of heroin, unintentionally, absent any other contributing causes, that was sufficient to show that death resulted directly and independently of all other causes from accidental bodily injury.

The majority opinion says this case is comparable to the Russian Roulette case of *Thompson v. Prudential Ins. Co.,* 84 Ga. App. 214 (66 SE2d 119). Not so! There, the only possible conclusion was that the deceased was willing to gamble with his life by pointing a loaded pistol towards his head and pulling the trigger. There is absolutely nothing about this case to suggest that the deceased intended to take his life or to gamble with his life, or that he had any reason to expect death would result.

In *Thompson v. Prudential Ins. Co.,* supra, a very interesting discussion is found at page 217, wherein authorities are cited, as to death by accident and accidental means, as follows: "Some of the courts relying upon this case [U. S. Mutual Accident Assn. v. Barry, 131 U. S. 100] seem to have construed 'accidental means' as including an intentional act effecting an unusual or unexpected consequence or result. Among the earliest of these decisions, often cited, is Western Commercial Travelers' Assn. v. Smith (C. C. A.)

85 F. 401, 40 L. R. A. 653."

Under the above authority, it matters not that the act which produced death was intentionally inflicted, but rather the question is whether the consequence, or result (death) was expected to flow therefrom.

Continuing with this discussion, on page 217, the court states: "The courts accepting it have generally held that where an injury is the result of a voluntary act, in the performance of a *slip or mishap*, it is to be regarded as having been caused by accidental means. Cf. Maryland Casualty Co. v. Massey, 38 F2d 724 (6 C. C. A.). Many courts have held too, that the means are accidental if the doer of the voluntary act was ignorant of a material fact or circumstance which would have caused him, had he known it, to do the act differently or not do it at all. Cf. Pope v. Prudential Ins. Co., 29 F2d 185 (6 C. C. A.)."

The majority opinion cites the case of *Johnson v. National Life &c. Ins. Co.*, 92 Ga. App. 818, at 820 (90 SE2d 36), as supportive of its position. But that case is readily distinguishable, for it was not shown there that the deceased had ever taken drugs before and, further, he consented for his physician to administer penicillin, but most important, he suffered with a hyper-susceptibility to such drug, and it was held that this is not a bodily infirmity. In the case sub judice, there is no evidence to show that the deceased *consented for the drug to be administered or that he administered it himself;* and there is no evidence to show that he suffered from a hyper-susceptibility to drugs. In the *Johnson* case, supra, there was no evidence to show that Johnson had ever taken drugs before, whereas there is evidence to strongly indicate that Jackson had taken drugs many times before, always without evil results, or at least, without suffering death as a consequence. We repeat, the *Johnson* case is clearly distinguishable from the present case, and is not authority for the majority's position.

There were issues for a jury to determine and I would reverse the lower court in granting the motion of the insurer for summary judgment. I therefore respectfully dissent.