30134. BITUMINOUS CASUALTY CORPORATION *et al. v.* ELLIOTT.

DECIDED NOVEMBER 26, 1943. REHEARING DENIED DECEMBER 14, 1943.

*T. Elton Drake, William E. Ball,* for plaintiffs in error.

*W. E. Armistead,* contra.

STEPHENS, P. J. (After stating the foregoing facts.) The Code, § 88-1212, provides that a certified copy of a death certificate which has been "registered under the provisions" of the act of 1927, page 368, as amended, "shall be prima facie evidence in all courts and places of the facts therein stated." Section 88-1214 provides, among other things, that a certificate of death shall contain "certification as to medical attendance on decedent, fact and time of death, time last seen alive, and cause of death with contributory (secondary) cause or complication, if any, and duration of each, and whether attributed to dangerous or insanitary conditions of employment; signature and address of physician or official making the medical certificate." This section also provides that "the personal and statistical particulars [items 1 to 13] shall be

authenticated by the signature of the informant, who may be any competent person acquainted with the facts," and that "the medical certificate shall be made and signed by the physician, if there was any, last in attendance on the deceased, who shall specify the time in attendance, the time he last saw the deceased alive, and the hour of the day at which the death occurred", and "further state the cause of the death, so as to show the course of the disease or sequence of causes resulting in the death, giving first the name of the disease causing death [primary cause] and the contributory (secondary) cause, if any, and the duration of each." It clearly appears from the evidence that the certificate of death introduced was not certified in compliance with the provisions of law relative to death certificates, in so far as it purported to be a certificate of death by a physician in attendance on the deceased. The Code, § 88-1215, provides for the making of a certificate where the death occurs without medical attendance. The certificate introduced did not purport to be under this section, but under section 88-1214.

It appearing from the evidence that Dr. A. W. Carter Jr., last saw the deceased alive on June 30, 1942, almost sixty days before his death, the certificate of death should have been made in accordance with the provisions of the Code, § 88-1215, or if there was a physician in attendance on the deceased, he, and not Dr. Carter, should have made the certificate. It follows as a matter of law that the certificate introduced in evidence was not prima facie evidence of the facts therein stated relative to the primary and secondary causes of the death of Elliott. The director therefore erred in finding as a matter of law that the death of Elliott was not directly or indirectly caused by his accident. In view of the testimony of the witnesses on behalf of the claimant to the effect that the deceased was in good health and physical condition before the accident, which consisted of a violent blow from a heavy object striking the body of a sixty-eight year old man in the lower portion of his back near his kidney, the testimony of Dr. Brandon to the effect that he had examined Elliott some time before the accident, and that Elliott then had arteriosclerosis did not necessarily constitute evidence that Elliott's death was not brought about as the result of the accident. The only reasonable conclusion under the facts of this case is that the violent blow to Elliott's back which rendered him unconscious, caused him to be taken to a hospital, and resulted

in his being unable thereafter to walk without wearing a brace, and consequent disability aggravated Elliott's pre-existing diseased condition and caused or materially contributed to his death. See *Griggs* v. *Lumbermen's Mutual Casualty Co.*, 61 *Ga. App.* 448 (6 S. E. 2d, 180); *Williams* v. *Maryland Casualty Co.*, 67 *Ga. App.* 649 (21 S. E. 2d, 478).

It follows that the judge of the superior court did not err in reversing the award of the single director, and in rendering a final judgment for the claimant. See *American Mutual Liability Ins. Co.* v. *Brock*, 35 *Ga. App.* 772 (2) (135 S. E. 103). The judgment, however, awarded compensation in the sum of $7.50 per week. It is conceded by counsel for the claimant in a brief filed in this court that she was entitled to receive only 85% of $7.50 per week, and they state their readiness to write off from the judgment enough to reduce the award to 85% of $7.50 per week.

The judgment is therefore affirmed, but with direction that the awarding of compensation of $7.50 per week be written off to the extent of awarding the claimant compensation of 85% of $7.50 per week.

*Judgment affirmed with direction. Sutton and Felton, JJ., concur.*