### 39320. DAVISON v. NATIONAL LIFE & ACCIDENT INSURANCE COMPANY.

Carlisle, Presiding Judge. 1. Where the clerk of the superior court transmitted to this court a supplemental certificate filed

under the provisions of Rule 14 of the Rules of the Court of Appeals which showed that the transcript of the evidence was physically attached to the bill of exceptions and ahead of the judge's certificate to the bill of exceptions when the judge signed the certificate and when the same was filed in the clerk's office and, through inadvertence, the bill of exceptions was disassembled and the transcript removed therefrom and transmitted to this court as a part of the record in the case, the motion to dismiss the writ of error (treated as a motion for summary affirmance) on the ground that the evidence had not been approved by the trial judge will be denied, since it appears that the judge's certificate, in view of the circumstances under which it was signed by him, did in fact certify to the correctness of the transcript of the evidence. *Colquitt v. Solomon,* 61 Ga. 492.

2. The verdict was properly directed for the defendant, for as was said in *Life & Cas. Ins. Co. v. Brown,* 213 Ga. 390, 391 (2) (99 SE2d 98), "Insurance against death by accident is usually, as here, afforded for a small premium and the coverage is correspondingly narrow. The liability is guarded by carefully chosen words, and a court has no more right by strained construction to make the policy more beneficial by extending the coverage contracted for than it would have to increase the amount of the insurance. Deliberately to do either would be a judicial wrong." There can be no accident, as a matter of law, without proof of facts pointing to death by accidental means. *Johnson v. Aetna Life Ins. Co.,* 24 Ga. App. 431, 432 (101 SE 134). In cases where the facts proven show that the insured met his death by external and violent means which resulted in visible wounds or contusions on the exterior of the body, there is a presumption of accident as opposed to suicide (*Templeton v. Kennesaw Life &c. Ins. Co.,* 216 Ga. 770, 771, 119 SE2d 549), but where there is no showing of external violent means producing visible wounds or contusions, if there is a presumption at all, it is that death was due to natural causes, and the burden is on the plaintiff to affirmatively prove accident. *Johnson v. Aetna Life Ins. Co.,* supra, p. 432; *Continental Cas. Co. v. Pittman,* 145 Ga. 641 (89 SE 717). In order to authorize a recovery under an accident policy such as here involved, before the plaintiff is aided by a presumption as to accident

she must prove not only the death but that the insured died by external and violent means (*New York Life Ins. Co. v. Jennings,* 61 Ga. App. 557, 6 SE2d 431), and the plaintiff must show that in the act which preceded the injury alleged to have caused the death something "unforeseen, unexpected or unusual occurred." *Johnson v. Aetna Life Ins. Co.,* 24 Ga. App. 431 (3), supra. Assuming that the evidence in this case authorized the conclusion that the insured met his death through violent means as that term has been defined (see Black's Law Dictionary, 4th Ed., p. 1742, and Caffaro v. Metropolitan Life Ins. Co., 14 NJMisc. 167, 183 A 200), and that such violence was external and purely accidental, the plaintiff's evidence failed to show either that the autopsy revealed any internal injury or that there was a visible contusion or wound on the exterior of the body and she thus wholly failed to bring her case within the strict terms of the policy. *Life & Cas. Ins. Co. v. Brown,* 213 Ga. 390, supra. This deficiency in her evidence was not cured or relieved by the bare statement contained in the death certificate that the insured's death was due to accident. For this reason the trial judge properly directed a verdict for the defendant.

*Judgment affirmed. Eberhardt and Russell, JJ., concur.* DECIDED APRIL 30, 1962—REHEARING DENIED JUNE 21, 1962.

*Cook & Palmour, A. Cecil Palmour,* for plaintiff in error. *Robert Edward Surles,* contra.

190

On Motion for Rehearing.

Eberhardt, Judge. 1. In their motion for rehearing counsel for plaintiff in error place much emphasis upon the proposition that a death certificate which was introduced in evidence contained the following statements: "Part I, Death was caused by: Immediate cause (a) 'Anoxio,' [sic] Due to (b) 'asphyxiation,' Due to (c) Overdose N₂O₂ [properly N₂O;] Part II, Autopsy— 'Yes', Accident (x). How did injury occur? 'Overdose N₂O₂.'" It is insisted that the death certificate was prima facie evidence of the facts stated therein, as is provided in *Code Ann.* § 88-1118.

The certificate was signed by Wm. P. Martin, M.D.M.G., dated July 6, 1960, and filed in the office of the local registrars on July 8, 1960. The date of death is stated in the certificate and in plaintiff's petition to have been July 1, 1960, and there was testimony that the insured's body was found on that date.

It is provided in *Code Ann.* § 88-1116, as amended (Ga. L. 1945, pp. 236, 242; 1953, pp. 140, 145; 1960, pp. 1009, 1019), "(1) Filing of certificate. The person in charge of interment shall file, with the local registrar of the district in which the death occurred or the body was found, a certificate of death *within 72 hours after death or the body is found.* (2) Personal data. In preparing a certificate of death, the person in charge of interment shall obtain and enter on the certificate the personal data required by the Board from the persons best qualified to supply them. He shall present the certificate of death to the *physician last in attendance* upon the deceased who shall thereupon

certify the cause of death; giving the condition or complication directly leading to death; the morbid condition, if any, giving rise to such condition or complication directly leading to death; the underlying cause of death; and other significant conditions contributing to the death but not related to the disease or condition causing death; and the duration of each."

By Ga. L. 1960, pp. 1009-1013, amendatory of Chapter 88 of the Code, provision is made for instances such as we here deal with where a body is found dead and there is no attending physician, and the cause of death is not immediately apparent, for the holding of an autopsy or post mortem examination, and if demanded an inquest, and further provides that: "Coroners shall require post mortem examination and/or autopsy to be performed and inquest in their respective counties as follows:

"(1) When any person shall die as the result of violence, or suicide, or casualty, or suddenly when in apparent health, or when unattended by a physician, or within 24 hours after admission to the hospital without having regained consciousness, or in any suspicious or unusual manner; provided, however, no inquest shall be held under the following circumstances:

"(a) When upon the completion of the post mortem examination and/or autopsy, the peace officer in charge and medical examiner are satisfied that, even while death resulted from violence, no foul play is involved. In this event, the peace officer in charge and medical examiner shall make a written report of their investigation and findings to the State Crime Laboratory as set forth in section 4 of this Act, and upon their recommendation, the coroner shall make and file a proper death certificate. . .

"(d) When upon the completion of the post mortem examination and/or autopsy, the medical examiner and peace officer in charge are sufficiently satisfied that death resulted from natural causes and the *medical examiner or coroner* is willing to and does sign and file a proper death certificate, and no demand for an inquest, is made within thirty (30) days thereafter, no inquest shall be held.

"(e) In all cases of hidden cause of death which do fall under the jurisdiction of the coroner, and after full and complete

investigation no evidence of foul play is found, no jury shall be impaneled. The *coroner* shall be authorized to sign the death certificate on the basis of the information given to him in the reports of the peace officer in charge and medical examiner. Provided, in such hidden causes of death, after a complete investigation if sufficient medical history is obtained by the coroner, the peace officer in charge or the medical examiner to disclose the cause of death, and if the *attending physician* will sign the death certificate, such cases shall not come under the jurisdiction of the coroner." (Emphasis supplied.)

It does not appear from the record or from the certificate itself that Dr. Martin was a "Medical Examiner." He was not the attending physician. The certificate was not signed by the coroner. It was neither made nor filed by the person in charge of interment with the local registrars within 72 hours after the death of the insured, Dr. Davison, or the finding of his body. Thus, the certificate was not made or filed "under the provisions of" Chapter 88 of the Code, as amended, and it is not prima facie evidence of the statements therein contained, though it was admitted in evidence without objection. *Bituminous Cas. Corp. v. Elliott,* 70 Ga. App. 325, 330 (28 SE2d 392); *Aetna Cas. &c. Co. v. Pulliam,* 99 Ga. App. 406 (1) (108 SE2d 823); *Troup County v. Henderson,* 104 Ga. App. 29, 35 (121 SE2d 65).

2. But, if the death certificate had been made "under the provisions" of Chapter 88 of the Code in all respects, it would still not show that the insured, Dr. Davison, died from *accidental means,* as is required by the terms of the policy. The statement on the certificate is to the effect that he died from asphyxiation due to an overdose of $N_2O$ and that it was an accident. The import of this statement is that the *result* was accidental, but there is absolutely nothing on the certificate as to what slip, mischance, mishap or accidental event happened in the administration of the gas to bring about the untoward result. There is likewise nothing in the other evidence admitted upon the trial to show or indicate either directly or circumstantially, that there was anything accidental in the *means* by which the insured met his death. There is no evidence that the oxygen controls or tubes became stopped, clogged or shut

off during the administration of the gas, or that there was any impurity or defect in it or that there was any lack of skill in the administration of it, or that it was inhaled accidentally. Rather, every circumstance in the evidence leads to the conclusion that Dr. Davison voluntarily and intentionally administered the gas to himself. Thus he did what he fully intended to do and precisely as he intended to do it. There was nothing accidental in the *means*, but only perhaps in the result. Barnsted v. Commercial Travelers' Mut. Acc. Assn. of America, 204 AppDiv 473 (198 NYS 416).

"It is generally held that death or injury caused by *unconsciously or unintentionally* inhaling gas or noxious fumes is an accident or results from external, violent and accidental means." (Emphasis supplied). 29A Am. Jur. 407, Insurance, § 1277. Examples cited are where the insured inhaled a leaking gas while asleep in a room, or while working in a well. There are no such circumstances here.

It has long been the rule in Georgia that to come within the coverage of a policy provision such as we here deal with the insured's death must result from accidental *means* rather than as an accidental *result* from usual, ordinary means voluntarily employed. *Cobb v. Preferred Mut. Acc. Assn.*, 96 Ga. 818 (22 SE 976); *Fulton v. Metropolitan Cas. Ins. Co.*, 19 Ga. App. 127 (91 SE 228). And see *American Nat. Ins. Co. v. Chappelear*, 51 Ga. App. 826, 832 (181 SE 808), where it was said that "The accidental happening must inhere in the *act* which causes the physical injury which results in the death of the insured." And see *Thompson v. Prudential Ins. Co.*, 84 Ga. App. 214 (66 SE2d 119).

The burden of proving that the insured's death resulted from accidental means, and was thus within the provisions of the policy, rested upon the plaintiff. *New York Life Ins. Co. v. Jennings*, 61 Ga. App. 557 (3), supra. There being no evidence in the records by which the jury might have found that the insured's death resulted from accidental means, the direction of a verdict for the defendant was proper.

*Motion denied. Carlisle, P. J., and Russell, J., concur.*