44864.  LATHAN v. MURRAH, INC.

Argued November 4, 1969—Decided March 17, 1970—
Rehearing denied April 1, 1970.

*Guy B. Scott, Jr., Allen Alexander,* for appellant.

*Erwin, Epting, Gibson & Chilivis, Eugene A. Epting,* for appellee.

Evans, Judge. Where the judge directs a verdict for either party, the evidence must be such as to demand his finding. Thus this case would have to be completely without any evidence on which liability could be found for the lower court to direct a verdict against the plaintiff. However, if there be evidence from which the jury might find that the defendant owed a duty, under the circumstances, not to leave the decedent unrestrained, and that this duty was breached and was responsible for a fall, and that a fall did result, which caused or contributed to the decedent's death, the lower court would have erred in granting a directed verdict. There was evidence from which the jury could have determined the defendant owed a duty, under the circumstances, not to leave decedent unrestrained, even momentarily; that this duty was breached; and that defendant was responsible for the fall of plaintiff's mother.

Where a verdict is directed, all of the evidence must be construed most favorably toward the party opposing the motion to direct it. *Curry v. Roberson,* 87 Ga. App. 785, 786 (75 SE2d 282); *Misfeldt v. Hospital Authority of Marietta,* 101 Ga. App. 579 (115 SE2d 244). In order to create an issue of fact in a case, "it is not necessary that the evidence should shine upon it with a clear light. It is enough if glimpses of it be afforded by the evidence. Truth is often dim, but is truth nevertheless. Frequently amongst the facts best proved is one which no witness has mentioned in his testimony, such fact being an inference from other facts." *Brown v. Matthews,* 79 Ga. 1 (2) (4 SE 13).

The death certificate introduced in evidence in this case lists the immediate cause of death as "possible skull fracture—middle fossa," and that the interval between the onset and death was 7 hours. It also suggests "consider cerebral hemorrhage—interval between onset and death 7 hours." Mrs. Helen Bragg, Director of Nursing, testified that her understanding from the message which reached her was that a patient had fallen and she went to the room; Dr. Nile R. Clark testified that he received a call from the nursing home to the effect that a patient had fallen onto the floor and possibly received an injury on or about the head; the house physician reported that the patient appeared to be suffering from some pressure within her head, and was having some bleeding from the left ear; the patient died about 7:50 p.m. on the day of the fall, and that night Dr. Clark filled out and signed the death certificate, and when asked whether trauma indicated or contributed to the cause of death responded: "There is a possibility it could have caused it or might have contributed. It depends on whether she fell and received a head injury and whether she had a stroke and fell on the floor, and that is something I don't guess any one will ever be certain about." He further testified: "I think she died of a cerebral hemorrhage. It is a question of whether she died from a trauma from an accident or whether a spontaneous hemorrhage, and I have no way of knowing." The jury was entitled to credit so much of Dr. Clark's testimony as it felt same was entitled to, or to discredit it completely, but the

evaluation to be placed upon such expert testimony is the function solely and exclusively of a jury. *Ocean Acc. &c. Corp. v. Lane,* 64 Ga. App. 149 (1, 2) (12 SE2d 413). Further, a death certificate "shall be prima facie evidence of the facts stated therein." *Code Ann.* § 88-1118. It cannot be ignored, inasmuch as the legislature has established this as public policy. It may be rebutted but it is a question for a fact-finding body to determine whether conflicting evidence introduced was sufficient to rebut the presumption. *Davis v. Atlantic Steel Corp.,* 91 Ga. App. 102 (84 SE2d 839); *Wender & Roberts v. Jones,* 95 Ga. App. 82 (97 SE2d 160); *Prudential Ins. Co. of America v. Kellar,* 213 Ga. 453 (99 SE2d 823). While the statute necessarily means that only "facts" contained in the certificate are accorded the dignity of constituting prima facie evidence (see *Liberty Nat. Life Ins. Co. v. Power,* 111 Ga. App. 458 (142 SE2d 103); s.c. 112 Ga. App. 547 (145 SE2d 801)), and the doctor's testimony at the trial was that the immediate cause of death was based upon his expert opinion as a doctor, a jury question remains whether or not the death certificate in the instant case established a presumption. Thus, conceding that the doctor's oral testimony at the trial shows that his final diagnosis which he made on the death certificate as to the cause of the death did not establish prima facie evidence of that fact, there was still evidence before the jury which would have authorized a finding that the deceased had a fall, died of a skull fracture, and the defendant was negligent in allowing her to fall. *Pippin v. Mutual Life Ins. Co. of N. Y.,* 108 Ga. App. 741, 752 (134 SE2d 446). In view of the evidence here, the trial court erred in granting the defendant's motion for a directed verdict at the close of the plaintiff's case. The error enumerated on the direction of the verdict is therefore meritorious.

*Judgment reversed. Bell, C. J., Jordan, P. J., Hall, P. J., Eberhardt, Pannell and Deen, JJ., concur. Quillian and Whitman, JJ., dissent.*

WHITMAN, Judge, dissenting. To find liability in this case the jury would have to find that the defendant owed a duty under the circumstances not to leave the decedent unrestrained, even momentarily, and that this duty was breached and was re-

sponsible for a fall. Further, they would have to find that the fall caused or contributed to the decedent's death. In our view the evidence would authorize all of these findings except the latter. The medical expert stated with definiteness that death resulted from cerebral hemorrhage or "stroke." But beyond this, his testimony was equivocal. He testified in effect that it could not be determined whether the stroke which brought death was caused from natural causes or was caused or contributed to by a fall.

"1. Facts which are consistent with either of two opposing theories prove neither. . . 2. Where it cannot reasonably be determined from the plaintiff's evidence whether or not the defendant's negligence caused the injury complained of, a nonsuit is proper. . . 'When the party upon whom the burden of an issue rests seeks to carry it, not by direct proof, but by inferences, he has not, in this reasonable sense, submitted any evidence for a jury's decision, until the circumstances he places in proof tend in some proximate degree to establish the conclusion he claims; and for this, the facts shown must not only reasonably support that conclusion but also render less probable all inconsistent conclusions.'" *Camp v. Emory University,* 95 Ga. App. 442 (1, 2) (98 SE2d 66). (Citations omitted). Generally, see 32A CJS 639, Evidence, § 1019 (b).

I would affirm.

I am authorized to state that Judge Quillian concurs in this dissent.