## 49059. ALLSTATE INSURANCE COMPANY v. HOLCOMBE.

PANNELL, Judge.

This case is before the court on an appeal from the denial of a motion for summary judgment made by the insurance company defendant in an action brought by the husband seeking recovery under a policy for the alleged accidental death of the wife, resulting from an injury received while in an automobile. The policy under Part II provides for benefits, "If an insured person sustains an injury: 1. While occupying a private passenger automobile." In the definition section of the policy, injury is defined as follows:

" 'Injury means bodily injury caused by an accident occurring while the insurance is in force and which injury results, within 365 days after the date of the accident, directly and independently of all other causes, in any of the losses to which the insurance applies, to wit, death, dismemberment and the total and irrecoverable loss of sight." The death certificate gave as immediate cause of death "Infarction small bowel due to marked arteriosclerosis." The interval between onset and death was given as four days. The alleged accident occurred on the 8th of the month and death occurred on the 17th of the month. According to the deposition of the defendant's husband, taken by the Insurance Company, the wife was injured in an automobile accident in a parking lot on June 8, 1971, when the steering wheel of the car driven by decedent came off and the automobile hit a curb and ran down into a decline; that when asked if she was hurt, she replied that her stomach had been hurt but refused to follow the advice of a chiropractor on the scene who suggested that she go to the hospital. Instead, she went home and went to bed as she had stated she wanted to do. On the next night when the husband came home, the deceased's abdomen was considerably swollen and the nurse was trying to give her an enema to get whatever it was out of her stomach. The husband then called Dr. Trotter and he came down and tried to get the deceased

to go the hospital and she said "No, I'm going to—I'm going to die right here." Subsequently, the deceased's sister, who was a practical nurse, was called and came to assist, and during that night about 3 o'clock in the morning the sister came and woke the husband up telling him, "We have got to do something"; so the husband called an ambulance to take his wife to the hospital, after hemorrhaging started and she was "throwing" blood through her nose and mouth. Upon questioning, he estimated this was four or five days after the accident, but upon refreshing his recollection, agreed that this latter occurred on the 16th of the month. The deceased died the next day on the 17th of June. Dr. Trotter, who signed the death certificate, gave the following testimony by depositions taken by the defendant: "Q. Did you form an opinion as to her immediate cause of death at that time? A. The immediate cause of death was due to an infarction of the small bowel. Q. Can you be a little more general as to the nature of that type of condition for us, Doctor? A. All right. Mrs. Holcombe had a blockage of the blood supply to the small bowel which was incompatible with life. Q. Now you, of course, I assume are familiar with her general condition, is that true? A. That is correct. Q. Briefly, what was her general condition as far as her health was concerned? A. Over a period of many years, Mrs. Holcombe had suffered marked generalized arteriosclerosis or hardening of the arteries. She had been seen by Dr. DeBakey several years before her demise, and he had done some corrective surgery from which she obtained good results. For several years prior to her demise, she had a recurrence of the generalized arteriosclerosis. She went back to see Dr. DeBakey. He felt that he was unable to help her surgically and she came back to Decatur. Q. All right, Doctor. Now did you make any secondary determination as to her cause of death along with the primary determination an opinion as to the immediate cause of death? A. Secondary cause of death was the severe generalized arteriosclerosis. Q. Doctor, do you have a medical opinion as to what the cause of the primary condition the cause of her death might have been? A. You mean what precipitated it? Q. What precipitated it, yes. A. Well, Mrs. Holcombe had

been involved in an automobile accident. I don't recall the exact date, but prior to her terminal illness, and whether or not there's any relationship between the automobile accident and the injury and relationship to the infarction of the bowel is a question. Q. Well, let me ask you a hypothetical question, Doctor, and see. Assume for the sake of this question that Mrs. Holcombe was involved in an automobile accident on June 8 of 1971, in which the steering wheel on the automobile in which she was driving came off the column and she ran into a curbing and was thrown into the column. Could you state whether or not in your opinion this could be a cause or a contributing factor to this infarction you mentioned? A. I think it could be a contributing factor... Q. (Loggins) Doctor, as I understand it, Mrs. Holcombe had arteriosclerosis and had a long history of that. A. A long history of that and severe. . . Q. Okay. Now, the cause of death as I understood your testimony and what you told us was an infarction of the small bowel, is that correct, sir? A. Right. Q. And the infarction was as I understand your testimony due to generalized arteriosclerosis, is that right, sir? A. The infarction was due to a blockage, or is a blockage of the arteries. Q. I was reading the record you made on August 5th where you indicated infarction of the small bowel was due to generalized arteriosclerosis, is that correct, sir? A. Yes, Q. So it was the hardening of the arteries which caused the infarction in your opinion, is that correct? A. That was the major portion of it, to be sure. Q. All right, sir. And as to any connection with any automobile accident, it is true is it not it is entirely possible there is no connection, is it not? A. It's true, it's possible there is no connection; that is right. Q. To put it in terms of possibilities, the possibilities are certainly no better than equal it was connected than it was not connected, is that true, Doctor? A. Essentially. Q. So it is possible the automobile accident had something to do with it and it's equally possible that it had nothing whatsoever to do with it, is that correct, sir? A. It is possible. Q. All right, sir. Doctor, in what has previously been marked as Exhibit Number 4, the death certificate — A. Yes? . . . Q. All right, sir. And the interval between the infarction

of the bowel and the time of her death I believe you indicated here was four days? A. Right. Q. And of course she had had arteriosclerosis as you indicated here for ten years, is that right, sir? A. Yes. Q. Doctor, November of 1970 I believe you had already noted that this lady had begun to have at least occlusions, organ blockages of the arteries in the abdominal area, is that correct? A. That is correct. Q. And that is the same arteries and area where it eventually caused her death? A. That is correct. Q. And so actually, Doctor, is it not true that the probabilities are even more likely that the automobile accident had nothing whatsoever to do with this lady's death, that the greater probability is that it was the arteriosclerosis, and the automobile accident had no influence? A. I don't think you can say greater, equal."

1. The primary question for consideration is: Does the evidence adduced show conclusively and as a matter of law that the infarction of the lower bowel of the deceased *was not* directly and independently of all other causes, the result of the accidental injury received in the automobile eight days before the death? On the trial of the case before a jury, the burden would be on the plaintiff to prove the affirmative of this question. On the motion for summary judgment by the defendant insurer the burden is on the insurer to prove the negative, and to prove it by evidence that demands a finding in favor of the defendant. *Morrow v. Thomason,* 127 Ga. App. 309 (193 SE2d 256); *Burnette Ford, Inc. v. Hayes,* 124 Ga. App. 65 (183 SE2d 78); *Durrett v. Tunno,* 113 Ga. App. 839, 840 (149 SE2d 826); *Continental Assurance Co. v. Rothell,* 121 Ga. App. 868 (2) (176 SE2d 259); *Central of Ga. R. Co. v. Woolfolk Chemical Works, Ltd.,* 122 Ga. App. 789, 795 (178 SE2d 710, 715); *Werbin & Tenenbaum, Inc. v. Heard,* 121 Ga. App. 147 (2) (173 SE2d 114).

2. The death certificate was prima facie evidence of the facts therein stated. § 88-1724 (c) of the Georgia Health Code (Ga. L. 1964, pp. 499, 595; Code Ann. § 88-1724 (c)). While Section 2, Par. 56 of this Act of 1964 repealed the Act approved March 8, 1945 (Ga. L. 1945, pp. 236, 242; former § 88-1118 of the Ga. Code Ann.), it, at the same time, enacted the above section. This court in the case of *Interstate Life &c. Co. v. Wilmont,* 123 Ga.

App. 337 (3) (180 SE2d 913) was correct in stating that the Act of 1964 repealed the Act of 1945, but it erred in holding that a death certificate is no longer prima facie evidence of the facts therein stated. This court in that case apparently overlooked the fact that the repealing Act re-enacted a similar provision.

3. While the death certificate, standing alone, was prima facie evidence of the facts therein stated, the presumption is rebuttable and whether it is rebutted is generally a jury question. *Lathan v. Murrah, Inc.,* 121 Ga. App. 554, 559 (174 SE2d 269). The additional evidence here, also introduced by the defendant insurer, was sufficient to show that the infarction of the bowel was caused by and immediately followed the abdominal injury sustained by the deceased in the automobile accident, and was caused directly and independently of all other causes by the accidental injury received. Even the doctor who signed the death certificate stated that it was equally possible or probable that the infarction of the lower bowel was caused by the accidental injury or by the arteriosclerosis already in existence.

While upon the trial this opinion of the doctor might not "preponderate" in favor of the plaintiff who would then have the burden of proof, and under these circumstances, have no "probative" value (*Woodruff v. American Mut. Liability Ins. Co.,* 67 Ga. App. 554 (21 SE2d 298)) neither does it "preponderate" in favor of the defendant insurer upon whom the burden of proof lies on its motion for summary judgment; but it does have probative value to rebut the presumption created by the death certificate that the infarction of the lower bowel was caused by the existing arteriosclerosis. The trial judge did not err in overruling the insured's motion for summary judgment.

*Judgment affirmed. Bell, C. J., Quillian, Evans, Clark and Stolz, JJ., concur. Deen, J., concurs specially. Eberhardt, P. J., and Webb, J., dissent.*

ARGUED FEBRUARY 6, 1974 — DECIDED APRIL 30, 1974 — REHEARING DENIED MAY 22, 1974 — 

*Gambrell, Russell, Killorin, Wade & Forbes, Sewell K. Loggins, Richard L. Stumm,* for appellant.

*Hendon, Egerton & Harrison, E. T. Hendon, Jr.,* for appellee.

DEEN, Judge, concurring specially.

I agree with the majority. This case will ultimately hinge on whether, if the collision had not occurred, the death would not have occurred. This can be established only by medical opinion evidence. "Opinion testimony of an ultimate material fact is never sufficient as a basis for the grant of a motion for summary judgment." *Mitchell v. Cox,* 126 Ga. App. 151, 152 (2) (190 SE2d 154). *Summer-Minter v. Giordano,* 231 Ga. 601 (203 SE2d 173) cannot be extended to cover this situation; its holding is that after the denial of summary judgment is reversed plaintiff cannot amend his pleadings so as to ground his case on another theory.

EBERHARDT, Presiding Judge, dissenting.

The death certificate here showed that the cause of decedent's death was an "infarction small bowel, due to marked arteriosclerosis." In addition, there was an autopsy in which the findings were essentially the same, including: "The abdominal aorta is quite atherosclerotic, but it, itself, is not occluded. However, the superior mesenteric artery appears totally occluded, as if possibly by an atheromatous embolus. The inferior mesenteric artery also appears at least partially occluded," and, "small bowel—one section. Total simple necrosis of the entire thickness of the bowel. Colon. One section . . . reveals simple necrosis of the mucosa and portions of the wall on one side; a line of neutrophilic infiltration is present at the junction . . . Clinical Pathological Summary. Autopsy revealed arteriosclerotic occlusion of the superior mesentery artery with infarction of virtually the entire small bowel and most of the large bowel. Arteriosclerosis of the superior mesenteric artery in other areas was evidenced. The aortic graft was noted. Other findings were essentially consistent with age and mode of death."

The attending physician's testimony makes it clear

that the cause of death was not solely and exclusively by an accidental means, though the probability was equal that the accident may have had some part in causing death. He testified that arteriosclerosis was a *secondary* cause and if there were two causes the accident could not have caused it *directly and independently of all other causes* as the policy requires to afford coverage.

The death certificate alone makes a prima facie case for movant.

Plaintiff, husband of the decedent, testified that he had not seen the accident and that his wife "didn't know what happened." She had experienced a long history of arteriosclerosis and treatment for it, including an operation by Dr. DeBakey. Dr. Trotter had attended her for the condition since 1954 and testified that her condition was an advanced one.

To avoid liability under the provisions of this accident policy it is not necessary that the insurer show that the accident had nothing to do with the insured's death, or that her prior health impairment was the sole cause of her death. If it appears that the impairment contributed to her death no liability arises under the policy.

A similar situation appeared in *Prudential Ins. Co. of America v. Kellar,* 213 Ga. 453, 457 (99 SE2d 823), reversing 95 Ga. App. 332 (98 SE2d 90), where the Supreme Court held: "The death certificate constituted prima facie evidence that myocardial infarction was the direct cause of the insured's death. See Ga. L. 1945, pp. 236-242 (Code Ann. § 88-1118). This proof as to the cause of the insured's death was not rebutted, the undisputed testimony of the physician who signed the certificate being that the disease or condition of the insured directly leading to his death was a myocardial infarction, or heart attack, with antecedent causes due to hypertensive cardiovascular disease, or high blood pressure, of several years' duration. The injuries sustained in the accident *contributed* to his death, but they were not related to the disease or condition *causing* his death . . . Under the terms of the policy, the insurer in the instant case was not liable to pay double the amount of the policy if the death of the insured resulted directly or indirectly from

bodily infirmity. The undisputed evidence disclosing that the primary cause of the insured's death was heart failure brought on by previous high blood pressure, and that the injuries he sustained to his hip and wrist in the accident, 68 days before his death, merely aggravated or accelerated his existing bodily infirmity, the insured's beneficiary was not entitled to a recovery and a verdict in favor of the insurer was demanded." Cf. *Continental Assurance Co. v. Rothell,* 227 Ga. 258 (181 SE2d 283), reversing 121 Ga. App. 868 (176 SE2d 259). (Emphasis supplied.)

The evidence submitted in favor of the motion for summary judgment made out a prima facie case, and more, for the movant, and it became "the duty of each party at the hearing on the motion for summary judgment to present his case in full." *Summer-Minter v. Giordano,* 231 Ga. 601, 604, supra. The pleadings were pierced and the plaintiff utterly failed to come forward with evidence rebutting the prima facie case made. There was no material issue of fact left. "In this case the petitioner had his choice of producing counter-proof and thus make an issue of fact, or do nothing, that is, create no issue of fact and suffer judgment." *Crutcher v. Crawford Land Co.,* 220 Ga. 298, 304 (138 SE2d 580).

I would reverse.

I am authorized to state that Judge Webb joins in this dissent.