## 52136. JENKINS et al. v. GULF STATES MORTGAGE COMPANY, INC.

MARSHALL, Judge.

Appellant Jenkins brings his appeal from a directed verdict in favor of Gulf States Mortgage Company, Inc. The evidence in pertinent part discloses that Jenkins owned land that he had subdivided into at least 42 lots. Gulf States, a mortgage company, had loaned money to Jenkins to purchase the land and subdivide it. It was originally intended that Jenkins also would construct homes on the lots, using construction capital and permanent financing furnished by Gulf States. Jenkins later indicated to the president of Gulf States a lack of

desire or ability to construct homes on the lots. Jenkins then entered into an oral agreement with the president of Gulf States to the effect that Gulf States (or the officer personally, a matter in dispute) would procure a purchaser or purchasers for the lots. The established price per lot was to be $2,500. After several prospective purchasers had been interviewed, the president informed Jenkins that the best offer that could be expected was $2,000 per lot. Jenkins accepted the lesser figure and issued an option to buy to Gulf States at that price. The evidence then reflects that a new purchaser was procured and by virtue of documentation prepared by Gulf States, Jenkins transferred all 42 lots to the new purchaser. The new purchaser wholly financed the acquisition through Gulf States. Jenkins testified that the sale was between himself and the purchaser and he believed the sale price was $2,000 per lot. Gulf States offered evidence that the sale was between it and the purchaser, Jenkins having previously agreed to sell the property to Gulf States at $2,000 per lot. The sale actually called for a sale price of $2,500 per lot. Gulf States contended that the sale price was $2,000 with the $500 extra constituting a "package deal" which was in addition to the purchase price of each lot and covered additional financial services dealing with subsequent construction costs. This "package deal" was never made known to Jenkins. There was evidence that the ultimate purchaser initially signed a security deed in favor of Gulf States purchasing the property at $2,000 per lot and then without objection signed a second replacement security deed buying each lot for a price of $2,500. There was no evidence that the purchaser would not have been willing to pay even more than $2,500 for each lot. There was additional evidence that the vice president of Gulf States in charge of loans was directed by the president to keep from Jenkins the fact that the 42 lots had been purchased for $2,500 each. The evidence is uncontradicted that the $21,000 difference became the property of Gulf States. It is also uncontradicted that Jenkins did not become aware of the difference in what Gulf States stated was the best possible price and the actual, higher price realized by Gulf States until long after the sale had been consummated.

Jenkins sued Gulf States on a theory of fraud and misrepresentation, demanding the $21,000 difference in purchase price, attorney fees and punitive damages. Gulf States in essence defended on the theory that the property sold for what Jenkins agreed was an acceptable price and the difference in price was to offset expenses unrelated to the property's value. At the conclusion of Jenkins' evidence, the trial court granted Gulf States' motion for a directed verdict. Jenkins enumerates as his sole error the grant of that motion. *Held:*

Viewed in the light most favorable to Gulf States, the evidence supports but does not demand a verdict in its favor. But the test required by CPA § 50 (a) (Ga. L. 1966, pp. 609, 656; 1967, pp. 226, 237, 246, 248; Code Ann. § 81A-150(a)) is that the evidence demand a verdict. Was there any evidence, all of which must be construed most favorably toward the plaintiff, which made a factual issue to be passed upon by the jurors? The trial judge has no right whatever to weigh the evidence, nor to decide any issue of fact. Before he can legally direct a verdict for the defendants, he must find from the evidence that there is *no evidence of any kind* supporting plaintiff's position. *Montgomery v. Pacific &c. Co.,* 131 Ga. App. 712, 714 (206 SE2d 631); *Johnson v. Mann,* 131 Ga. App. 169 (207 SE2d 663); *Lathan v. Murrah, Inc.,* 121 Ga. App. 554 (174 SE2d 269); *McNabb v. Hardeman,* 77 Ga. App. 451 (49 SE2d 194).

Jenkins pleads fraud and misrepresentation in the sale of the property, resulting in damages to his interests. In order to sustain his burden, Jenkins had to show: (1) representations made by Gulf States, (2) that these representations were knowingly false, (3) that they were made to deceive, (4) that they in fact deceived Jenkins and (5) that Jenkins acted on these representations to his detriment. *Gem City Motors, Inc. v. Minton,* 109 Ga. App. 842, 844 (1) (a) (137 SE2d 522).

Viewed in the light most favorable to Jenkins, the evidence showed that the president of Gulf States undertook to obtain buyers for property owned by Jenkins and promised to obtain the best price possible. The stated selling price set by Jenkins was $2,500 per lot. The president then obtained a buyer for the lots at the price of

$2,500 but informed Jenkins that the buyer would pay no more than $2,000 per lot. The loan manager of Gulf States was cautioned not to let Jenkins become aware that the purchaser had paid $2,500 rather than $2,000 per lot. Jenkins sold 42 lots to one he believed was the purchaser by deed directly from Jenkins to the purchaser at the price of $2,000 per lot. In fact, Gulf States loaned the purchase price of $2,500 per lot to the purchaser but gave Jenkins only credit for a purchase price of $2,000 per lot on his indebtedness to Gulf States. The $21,000 difference was credited directly to Gulf States and not for the benefit of Jenkins.

What the parties to this real estate transaction intended by their acts is a question of fact. Fraud may be proved by slight circumstances, and where the evidence proves that the seller was told the best price was $2,000 per lot but the actual selling price was $2,500 per lot, it becomes a jury question whether the false statements were made with intent to deceive. *Central Chevrolet, Inc. v. Campbell,* 129 Ga. App. 30 (198 SE2d 362).

Based upon the foregoing, there were real issues of fact to be resolved by the jury. It follows the trial court erred in removing from the jury these disputed issues and substituting itself for the jury as the ultimate trier of fact. See *Atlanta Coca-Cola Bottling Co. v. Jones,* 236 Ga. 448 (224 SE2d 25).

*Judgment reversed. Pannell, P. J., and McMurray, J., concur.*

Argued May 4, 1976 — Decided June 1, 1976.

*Araguel & Sanders, Jerry D. Sanders,* for appellants.
*Willis & Carter, Grover C. Willis, Jr.,* for appellee.