54704. NATIONAL LIFE & ACCIDENT INSURANCE COMPANY v. FENDER et al.

WEBB, Judge.

Lowell G. Joiner at the time of his death was insured by National Life and Accident under a policy of insurance

in the face amount of $8,000. The policy contained an accidental death benefit provision for an additional $8,000 for death resulting from bodily injuries. "Bodily injuries" was defined in the insurance contract to "mean injuries which are effected directly and independently of all other causes through external, violent and accidental means, as evidenced by a visible contusion or wound on the exterior of the body... and which, independently of all other causes, result in the death of the insured within 90 days from the date of which the injuries were sustained."

The insured was found by his brother-in-law on March 12, 1975 dead in a prone position at or near the bathroom in his apartment. The insurance company paid the face amount of the policy, but refused to pay the additional death benefits, and the beneficiaries brought this action for the additional death benefits. They alleged that the insured "did die as a result of external and accidental means as provided" for in the policy. They also demanded penalty, interest and attorney fees.

The case was submitted to the jury, the insurance company's motion for a directed verdict was overruled, and a verdict was returned for the plaintiffs for $8,000 plus attorney fees and penalty. Thereafter the insurance company moved for a judgment notwithstanding the verdict or in the alternative for a new trial. It is the overruling of this motion upon which the insurance company's appeal is predicated.

The sole issue is whether the insured's death was under such circumstances as to bring him within the additional death benefit provisions of the policy.

The death certificate showed as to cause of death: "Immediate cause (a) probable accident due to falling and striking right side of head. Possibly due to (b) many metabolites of sedative drugs found—meprobamate, valium and dalmane—these together possibly caused death—no other causes were found on autopsy." The doctor who signed the certificate testified in explanation of this statement as to cause of death: "In my opinion, anybody that is taking drugs, alcohol or anything like that, most common cause of death is accident. And, this was found in his body on autopsy and that's the reason these were listed." He further testified there were no

visible injuries and no incision. He said the right side of the decedent's face was contused, but whether he struck it or whether it was due to his lying in that position, he didn't know and could not form an opinion; that it could have been caused by him lying there over several hours, and could have occurred subsequent to death as well as before.

A brother-in-law testified that it was he who discovered the deceased, that the deceased was in a "prone position" on his hands and knees and looked like he was trying to crawl to the bathroom, that there were several beer cans and containers for medicine around close by, and there was a spot of blood in the area near him, that he could not tell where the blood came from and that he saw no wounds on the body.

The police officer who investigated the death testified that he looked at the decedent's head and visible part of the torso and found no wounds, no puncture wounds, no incisions, no bleeding about the body. He testified that he looked about the nostrils to see if there was any dried blood there, but didn't see any; that the blood spot "was a watery type. It wasn't a true blood spot." He also testified that the deceased had been arrested and jailed the weekend preceding death on a charge of driving under the influence of intoxicants. Two sisters testified that the day before his death they had seen their brother with a bruise on his head.

The autopsy report was admitted into evidence only after the trial judge directed the deletion therefrom of the statements "There is no evidence of head injury and so forth" and "No anatomical cause of death found."

1. The principal issue was whether the insured's death resulted from accidental means within the terms of the policy. The autopsy report, admitted into evidence, should have gone to the jury without having had excised the above quoted statements.

The death certificate standing alone was prima facie evidence of the facts therein stated. *Allstate Ins. Co. v. Holcombe,* 132 Ga. App. 111, 115 (3) (207 SE2d 537) (1974). Although this presumption is rebuttable, whether it is rebutted is generally a jury question. *Lathan v. Murrah, Inc.,* 121 Ga. App. 554, 559 (174 SE2d 269) (1970).

Testimony of witnesses raised some questions as to the presumption, and the statements deleted from the autopsy report relate to that issue. It was error to exclude them.

2. "[W]here there is no showing of external violent means producing visible wounds or contusions, if there is a presumption at all, it is that death was due to natural causes, and the burden is on the plaintiff to affirmatively prove accident. [Cits.] In order to authorize a recovery under an accident policy such as here involved, before the plaintiff is aided by a presumption as to accident she must prove not only the death but that the insured died by external and violent means [cit.], and the plaintiff must show that in the act which preceded the injury alleged to have caused the death something 'unforeseen, unexpected or unusual occurred.' " *Davison v. National &c. Ins. Co.,* 106 Ga. App. 187, 188 (2) (126 SE2d 811) (1962) (cert. den.).

In the *Davison* case the accidental death clause was almost identical to that of the present case. On rehearing in that case this court reiterated: "The burden of proving that the insured's death resulted from accidental means, and was thus within the provisions of the policy, rested upon the plaintiff." Ibid., p. 193.

3. Error is assigned on the trial court's denial of the insurance company's motion for mistrial made prior to the discharge of the jury based on the statement by one of the jurors to the court that the bailiff had instructed them relative to the preparation of the verdict. The bailiff testified that after the jury had reached their decision, and the jurors were standing and ready to come out and waiting for the foreman to write the verdict, he advised the foreman "the three ways that he had to put it in." The jurors were polled, and each answered that the verdict rendered was his.

A bailiff is to make no communication to a jury and is to permit no one else to communicate with them, except by leave of court. Code Ann. §§ 24-3201, 59-717. The action of the bailiff herein was altogether improper. Here, however, the jury had already reached a verdict, the foreman was in the process of writing the verdict and the bailiff voluntarily advised him as to form. A poll of the

jury having shown that the verdict indeed was the verdict of each, the court did not err in overruling the motion for mistrial, or the motion for new trial, based on that ground. *Battle v. State,* 234 Ga. 637 (217 SE2d 255) (1975). While it was not error to overrule the judgment notwithstanding the verdict it was error to overrule the motion for new trial.

*Judgment reversed. Deen, P. J., and Birdsong, J., concur.*

ARGUED OCTOBER 6, 1977 — DECIDED OCTOBER 28, 1977 — REHEARINGS DENIED NOVEMBER 16, 1977 — ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Young, Young, Ellerbee & Clyatt, O. Wayne Ellerbee,* for appellant.
*Jack W. Carter,* for appellees.