**Mrs. Jewell L. PHILLIPS,**
**Plaintiff-Appellant,**

v.

**HOME SECURITY LIFE INSURANCE COMPANY, Defendant-Appellee.**

**No. 80–7415**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.
Unit B

Dec. 18, 1980.

---

Fredericks, Jones & Wilbur, Carl Paul Fredericks, Marietta, Ga., for plaintiff-appellant.

Carter, Ansley, Smith & McLendon, Ben Kingree, III, Atlanta, Ga., for defendant-appellee.

Before RONEY, FRANK M. JOHNSON, Jr. and HENDERSON, Circuit Judges.

PER CURIAM:

This is an appeal from an order of the district court sustaining a motion for summary judgment filed by the appellee, Home Security Life Insurance Company (hereinafter referred to as "Home Security"), and entering judgment against the appellant, Mrs. Jewell L. Phillips. Home Security was named by Mrs. Phillips as the defendant in a suit filed in the State Court of Cobb County, Georgia, for double indemnity benefits under a group insurance policy in the sum of $35,000.00, plus bad faith penalties and interest, exemplary damages and litigation expenses. Mrs. Phillips was designated by the insured, her son, the late Stanley R. Phillips, as beneficiary of the Home Security life insurance policy issued to HIFI Buys, Inc., on behalf of its employees. In August, 1979, Home Security removed the case to the United States District Court for the Northern District of Georgia pursuant to the provisions of 28 U.S.C.A. § 1441 (1976). On May 2, 1980, the district court granted Home Security's motion for summary judgment.

Young Phillips died on Christmas Day, 1978, after attending a Christmas party at which he drank two–thirds of a fifth of scotch without taking a breath. Some ten minutes after consumption of the liquor, Phillips dozed off and fell onto the floor. His friends moved him into a bedroom and rested him face down on a bed. The next morning he was discovered dead in that same position.

Dr. Joseph L. Burton, the medical examiner for DeKalb and Cobb counties in Georgia, testified during deposition that he performed a post–mortem examination on the deceased within twenty–four hours of death. His examination disclosed liquid and small food particles in the deceased's mouth and nose. Results of a urine sample indicated that the alcohol in the urine of the deceased was equivalent to a blood level of alcohol of .2%, twice the percentage at which a person is legally intoxicated for traffic law purposes. The doctor stated that, in his opinion, the cause of death was "aspiration pneumonitis due to acute ethanol intoxication," a condition similar to suffocation. He explained that material aspirated from the stomach seeps into the lungs and causes fluid and blood to accumulate, precluding the ability of the lungs to exchange oxygen and carbon dioxide.

Home Security defends the claim for accidental death benefits on two grounds. First, it argues that Phillips' death was not an accident, and second that no internal injuries were revealed by autopsy. Without proof of these elements, contends the company, the insured's death was not covered by the policy, which paid for a loss of life "as the direct result of accidental bodily injury and independently of all other causes, as evidenced by a visible contusion or wound on the exterior of the body (except in the case of drowning or internal injuries revealed by an autopsy)." The trial court, in granting the appellee's motion for summary judgment, concluded that Phillips died of causes beyond the scope of the poli-

cy. The court found that the parenthetical reference to drowning and internal injuries was not applicable where death was caused by intoxication. Also, the external injury clause was not met, given the absence of visible marks on the body. Although this determination alone was sufficient to preclude recovery under the policy, the court also expressed doubt that the deceased's death could be characterized as accidental, in light of Phillips' voluntary alcohol consumption.

■ We need not determine whether death caused by anoxia as a result of regurgitation induced by acute intoxication is "accidental" or death resulting from "accidental means." [1] Even if she could show accidental death, the appellant failed to prove that internal injuries were discovered by an autopsy. The requirement that an actual autopsy be performed and that it result in the discovery of injuries has been followed to the letter by Georgia courts. Thus in *Life & Casualty Insurance Co. v. Brown*, 213 Ga. 390, 99 S.E.2d 98 (1957), where no autopsy at all was performed, the court said:

> Conceding, but not holding, that the amended petition is sufficient to show that the insured died from an injury affected solely through external, violent and accidental means, and independent of all other causes, there still would be no liability under the policy unless the internal injury from which he died was revealed by an autopsy.

*Id.* at 392, 99 S.E.2d 98. In completing the official death report on Phillips, Dr. Burton

---

1. Georgia has adopted the distinction between "accident" and "accidental means" contained in 10 Couch on Insurance § 41.28:

> In other words, accidental death is an unintended and undesigned result arising from acts voluntarily done or events undesignedly occurring. The term 'accidental means' refers to the occurrence or happening which produces the result, rather than the result; it is concerned with the cause of the harm rather than the character of the harm.

Not only have the Georgia courts drawn this distinction, they have also read into an insurance policy the "accidental means" test where the policy language provided coverage only "if the insured, as a result of bodily injury caused

solely by accident ... [suffered loss]." *Continental Assurance Co. v. Rothell*, 227 Ga. 258, 259, 181 S.E.2d 283 (1971). In interpreting the term, "accidental means," the court has said an insured's death "may have been an accident in that the end result of his drinking alcohol, death, was not desired; but the cause of the death was not by accidental means." *Kindred v. Pilot Life Ins. Co.*, No. 74–655 (June 16, 1975, N.D.Ga.) The medical examiner's report classifies the death as an "accident," but that may not be conclusive for insurance purposes given the fact that the examiner, under Georgia law, had only four classifications to choose from, the most nearly correct being "accident."

checked the square describing the procedure he undertook as an examination, rather than an autopsy.[2] Moreover, during his deposition he acknowledged that, while internal injuries consistent with this type of body reaction to alcohol are normally found "if an internal autopsy was done," he did not personally examine Phillips' internal organs. From the record, it is clear that Dr. Burton did not consider the examination of the body to have been an autopsy as that term is used in medical parlance.

Even where visible signs of the internal injuries are present and are conclusive proof of the existence of those injuries, there can be no recovery in the absence of an autopsy. In *Brown*, the deceased, while being administered ether during an appendectomy, vomited food which lodged in his windpipe and he suffocated. The facts state that his brain was irreparably injured and this injury was externally revealed by cyanosis, a bluish tint to the skin. The petition failed to allege that an autopsy was ever performed. The court said:

> There is no allegation in the amended petition that an autopsy was performed, and its allegation that the internal injury from which the insured allegedly died was revealed by cyanosis, which means a bluish tint to the skin, is under the terms and meaning of the policy insufficient to allege that the internal injury which produced his death was revealed by a wound or contusion on the exterior part of his body.

213 Ga. at 392, 99 S.E.2d 98. In the present case, the examination noted the presence of cyanosis which would serve to indicate internal injury, but this evidence fails to meet the policy requirement that the injury to internal organs be revealed by autopsy.

Even assuming that the limited examination was an autopsy and that the damaged organs suffered "injuries,"[3] they were not "revealed" by the examination. Although the death certificate may indicate an actual autopsy, there can be no recovery if the autopsy fails to reveal an internal injury. *Davison v. National Life & Accident Ins. Co.*, 106 Ga.App. 187, 190, 126 S.E.2d 811 (1962). Given the doctor's opinion that death was caused by anoxia, the organ most likely to have been injured was the lungs. Yet during his examination no dissection was made of the lungs; no specimens of lung tissue were removed.

We recognize that in Georgia insurance contracts are to be strictly construed against the insurer. *Lee v. Fidelity & Casualty Co. of New York*, 567 F.2d 1340 (5th Cir. 1978). But this principle is tempered somewhat when accident policies are involved. As the *Brown* court noted:

> Insurance against death by accident is usually, as here, afforded for a small premium and the coverage is correspondingly narrow. The liability is guarded by carefully chosen words, and a court has no more right by strained construction to make the policy more beneficial by extending the coverage contracted for than it would have to increase the amount of the insurance.

*Life & Casualty Ins. Co. of Tennessee v. Brown*, 213 Ga. at 390, 99 S.E.2d 98. The appellee, as the moving party for summary judgment, offered deposition evidence showing the absence of "internal injuries revealed by an autopsy." The appellant, in turn, advanced no evidence of her own to raise any genuine issue as to this fact. Consequently, even with all inferences drawn in her favor as the opposing party, she cannot prevail on appeal. 6 Moore's Federal Practice ¶ 56.15[3].

The order of the district court sustaining the motion for summary judgment is

AFFIRMED.

---

2. An autopsy is generally defined as a post-mortem examination. Webster's Third New International Dictionary 149 (1966). The fact that the medical report requires classification of the doctor's procedures as either an examination or an autopsy, however, suggests that a distinction is made between the two.

3. The doctor characterized the effects of alcohol–induced aspiration pneumonitis, including, for example, dissolution of lung tissue, stomach congestion and swelling of the brain, as "not injuries but physiologic changes in the organs secondary to . . . ingestion of alcohol."