67440. DREW v. LIFE INSURANCE COMPANY OF GEORGIA.
67464. DREW v. GULF LIFE INSURANCE COMPANY.

McMURRAY, Chief Judge.

These two cases involve exclusion clauses in certain life insurance policies. Case No. 67440 involves a life insurance policy having a

double indemnity clause payable upon the accidental death of the insured and was written by Life Insurance Company of Georgia, which paid the regular benefits with reference to the death of Franklin E. Drew, the insured, but refused to pay the double indemnity clause on the grounds that the death of Drew was not accidental. Case No. 67464 involves five separate insurance policies written by Gulf Life Insurance Company, each having a somewhat different exclusion but providing for benefits for loss of life by reason of accidental means. None of these policies contain the same language as the exclusion contained in the Life Insurance Company of Georgia policy. However, the two cases arise out of the same set of facts resulting from the death of Drew, and we review them as companion cases.

The admitted facts are as follows: Drew and his former wife, the beneficiary named in the various insurance policies, went to a certain bar and grill on the afternoon in question. A customer came into the bar and slapped the owner, a friend of Drew. Drew, who was of considerable size and weight, had a verbal agreement with the owner that if trouble developed while he was in the bar and grill, he would lend his assistance. When notified that the customer had slapped the owner Drew asked the individual working behind the bar to call the sheriff. The customer, who was being held by another, was then held by Drew ostensibly until the sheriff would arrive, placing him on the floor, advising him that he should not have struck the owner and that he (Drew) was going to detain him until the sheriff arrived. However, the customer talked him (Drew) into letting him leave, stating that he would behave. But, as he exited the building he threw something through the door breaking the glass. Drew then obtained a pistol from within the bar area and went outside. As the customer left in a motor vehicle the sheriff and a police officer were arriving on the scene. A bystander who witnessed the incident testified by affidavit that he knew the customer and Drew personally, observed Drew with the pistol and overheard him "state twice" that if the customer returned he was "going to kill him." Shortly thereafter the customer returned to the parking lot, got out of the vehicle with a shotgun, at which time Drew was standing by the front door of the place of business armed with the pistol. Opprobrious words were shouted by the customer to Drew. Drew told him to put the gun down but he continued to leave the vehicle with the shotgun. The sheriff also yelled at him (the customer) twice. Drew, however, who had the pistol, shot at the customer. The customer fired a blast from the shotgun hitting a pick-up truck parked approximately 20-25 feet from where Drew was standing. Drew shot again at the customer and moved between or behind another pick-up truck parked in the parking lot. The customer ran forward with the shotgun when Drew had taken cover and when Drew raised up the customer again fired another blast through the back

windshield of the pick-up. This blast exited through the front windshield and struck Drew causing his death a short time later.

## Case No. 67440

Faye Ruth Drew (or Faye D. Drew) as plaintiff, having made demand for the accidental death benefits arising from the death of the insured, which the insurer refused to pay, sued Life Insurance Company of Georgia for $50,000 as the double indemnity benefit under the policy, $12,500 for bad faith, penalty, and reasonable attorney fees.

The defendant answered admitting jurisdiction and the existence of the policy which it attached to its answer that said policy was in full force and effect but contended that the insured did not die accidentally and denied the claim. Defendant also added a defense that the decedent's death was caused or contributed to by a shotgun wound intentionally inflicted by the person shown above who was a customer and that the benefit for death by accidental means is not payable if death is caused or contributed to, directly or indirectly, by a gunshot wound, "unless unintentionally inflicted by a person other than the insured." We note here in the exclusion contained in the policy that the benefit for death by accidental means "will not be payable if death is caused or contributed to, directly or indirectly, by . . . gunshot or pistol wound unless unintentionally inflicted by a person other than the Insured."

After discovery, which in substance shows the above facts, the defendant moved for summary judgment. Whereupon the trial court in consideration of the defendant's motion for summary judgment rendered certain findings of fact (much of which is shown above) that the decedent "knew or should have known he was putting his life in danger" when he fired the pistol at the person who killed him. The trial court then added to its conclusions of law, citing *Riggins v. Equitable Life Assurance Society*, 64 Ga. App. 834, 836 (14 SE2d 182), that "[w]here the insured is innocent of aggression or wrongdoing and is killed in an encounter with another, his death is considered accidental, within the meaning of the usual accident policy," but if the insured is the aggressor in an assault and "knew or should have anticipated that the other might kill him in the encounter, the death is not to be considered accidental." The court then cited *Car. Life Ins. Co. v. Young*, 99 Ga. App. 848, 853 (110 SE2d 67), which cites *Thompson v. Prudential Ins. Co.*, 84 Ga. App. 214, 218 (66 SE2d 119), that where death results solely by external, violent and accidental means, it is incumbent upon the claimant to show that in the act that preceded the injury alleged to have caused the death of the insured "something unforeseen, unexpected or unusual occurred." The court then attempted to analyze the evidence occurring here as to same and

granted summary judgment to the defendant holding it was entitled to judgment as a matter of law. Plaintiff appeals.

### Case No. 67464

Based upon the five separate insurance policies written by Gulf Life Insurance Company in which the plaintiff was named as beneficiary she sought judgment thereon in five counts contending that the insured died accidentally, attaching the various policies, all of which are accident benefit policies. The defendant answered in substance denying the claims contending the decedent "died while committing or attempting to commit an assault or felony." It contends that the plaintiff's decedent was the aggressor admitting only the substance of the various policies and that no benefits were due the plaintiff under the terms of said policies.

As these policies differ somewhat in their verbiage and also from the language contained in the Life Insurance Company of Georgia policy in Case No. 67440, we set forth in substance the language of each we consider necessary for consideration of the case. Each of these policies provide accidental death benefits. As to Policy No. 598 017 056 (a family type policy), it clearly states an exclusion that if the insured's death occurs or results from an injury while "[c]ommitting or attempting to commit an assault or felony" no benefits will be paid. In Policy No. 691 003 232 providing for accidental death benefits there is an exclusion if the insured's death results "directly or indirectly . . . [while] [c]ommitting or attempting to commit an assault or felony." In Policy No. 575-021-661 it states that the policy "shall be null and void if the insured's death results . . . [f]rom bodily injury intentionally inflicted by another person, if the Insured was the aggressor." Policy No. 525-033-869 also contains an exclusion, that is, that the policy "shall be null and void if the Insured's death results . . . [f]rom bodily injury intentionally inflicted by another person." Policy No. 605-061-006 contains an exclusion, among others, that the policy does not provide benefits for loss "due directly or indirectly to . . . [t]he commission of an assault or felony by the Insured." The above contains the exclusion language in the policies which the trial court considered in making its decision in the case sub judice. Again citing the same cases as those shown in the final judgment in Case No. 67440 that there was nothing "unforeseen, unexpected or unusual" and that the decedent "knew or should have known he was putting his life in danger" the court granted summary judgment to the defendant Gulf Life Insurance Company and held it was entitled to judgment as a matter of law. The plaintiff appeals.
*Held*:

1. Generally, in regard to accidental death benefit policies where the insured is innocent of aggression or wrongdoing and is killed in an

encounter with another, his death is considered accidental within the meaning of the usual accident policy, but if the insured is the aggressor in an assault and knew, or should have anticipated, that the other might kill him in the encounter, the death is not to be considered accidental. See *Riggins v. Equitable Life Assurance Society*, 64 Ga. App. 834, 836, supra. In further regard to the above rule, an insured is not denied the right of self-defense. We find the following language in *Gresham v. Equitable Accident Ins. Co.*, 87 Ga. 497, 499-500 (13 SE 752): "A faultless and unwilling conflict by the insured, one which he neither provoked nor invited, one which he did not accept when formally or informally tendered, one in which he was forced to engage for self-defence alone and from which he withdrew, or endeavored in good faith to withdraw, when his defence was accomplished, ought not to, and would not, be treated as a causative fight on his part within the meaning and intent of the policy, but would be regarded as right and proper resistance to aggressive or offensive violence. To protect his life from destruction or his person from injury might be as much a matter of duty to the insurance company as of interest to himself. Means of resistance which it would be reasonable for him to employ for his own safety, he could not be excused for neglecting, if an efficient use of them were shown to be within his power. It would be no objection to their use that they involved 'fighting back' in order to repel the violence of an assailant. The stipulation against liability for injuries caused by fighting refers to voluntary fighting by the insured, or involuntary fighting brought on wholly or partially by his fault or temerity — fighting for which he is partly responsible either as a volunteer or as a rash speaker or a wrongdoer. It could not be the purpose of the stipulation to cut off the right of self-defence by the use of force." Generally, whether the death of an individual by being shot by another is an accident is for the jury to determine "where the evidence, together with all reasonable inferences to be drawn therefrom, is conflicting as to whether or not the insured's own wrongful assault produced his death, or whether or not he voluntarily and intentionally committed an assault from which he foresaw, or could have foreseen, that death might result." *Johnson v. Southern Life Ins. Co.*, 95 Ga. App. 625 (98 SE2d 382).

The above cases which involve several different types of exclusion clauses in life insurance policies payable upon accidental death have resulted in the court granting summary judgment to the defendant insurers based upon certain findings of fact with reference to the evidence which the court has construed more strongly against the insured finding he was the aggressor in firing the first shot. Hence, the trial court held that the insurers were entitled to judgment as a matter of law. However, in consideration of summary judgment cases all evidence must be construed more strongly against the movant, giving

the opposing party the benefit of all reasonable doubts and all favorable inferences that may be drawn from the evidence. See *Holland v. Sanfax Corp.*, 106 Ga. App. 1 (1), 4 (126 SE2d 442); *Giant Peanut Co. v. Car. Chemicals*, 129 Ga. App. 718, 719 (1) (200 SE2d 918). As shown from the evidence here the trial court has assumed or presumed from the fact that the decedent fired the first shot that he was an aggressor, finding that "he knew or should have known that he was putting his life in danger" when he shot the pistol at the person who killed him, being the aggressor in the assault. We do not agree with this assumption on the part of the trial court. After the first encounter with the unruly customer the decedent obtained a pistol from within the bar area and went outside and was standing outside the place of business when the customer returned to the parking lot. At this point in time if there was a mutual intent to fight, which a jury could determine from all the facts and circumstances surrounding the encounter, then a verdict and judgment in favor of the insurers would be correct. At that point in time when the decedent shot at the customer a jury could have determined he was doing so in self-defense as that person was advancing on him with a shotgun and the sheriff who was present and the decedent both were attempting to have him cease and desist. A jury could then determine that the decedent further attempted to withdraw from this encounter by moving between or behind another pick-up truck. After the customer shot at him, the decedent was then killed when the customer again fired another blast through the back windshield of the pick-up which exited the front windshield and struck the decedent in the face and head causing his death a short time later. Under the circumstances it is quite clear that the trial court has construed the evidence more strongly against the decedent and not as required by the law in consideration of summary judgment cases.

However, we must look to the substance of the contracts by and between the parties with particular reference to the exclusion clauses. In Case No. 67440 with reference to the double indemnity clauses for the payment of accidental death, this benefit "will not be payable if death is caused or contributed to, directly or indirectly, by . . . gunshot or pistol wound unless unintentionally inflicted by a person other than the Insured." Clearly, the decedent died from a gunshot wound inflicted intentionally by a person other than the insured. The evidence demands a finding that the double indemnity clause is not payable under the facts of the case here. Thus, even if the trial court has misconstrued the evidence and considered same more favorably toward the defendant, if the trial court is right for any reason, a reversal is not required if the evidence demands the judgment. Accordingly, we affirm the judgment in Case No. 67440.

2. We are faced with different clauses, however, with reference to

the policies set forth in Case No. 67464. In Policy No. 525-033-869 an exclusion is contained therein that it "shall be null and void if the insured's death results . . . [f]rom bodily injury intentionally inflicted by another person." Clearly this exclusion is the exact circumstances under which the decedent was killed, that is, being intentionally inflicted by another person. For the same reason as shown above in Division 1 the trial court did not err in granting summary judgment as to this policy.

3. Policy No. 575-021-661, however, contains an exclusion which reads slightly different. It states that the policy shall be null and void if the insured's death results from bodily injury intentionally inflicted by another person "if the Insured was the aggressor." There is an issue of fact here as to whether the decedent was the aggressor or whether he merely shot in self-defense and was seeking to escape at the time he was killed. As to the remaining policies (598 017 056; 691 033 232; 605-061-006), all involve similar exclusions if death results when the decedent is committing or attempting to commit an assault or felony. Although each of these policies reads slightly different as to the exclusion language all of these policies involve facts which the jury may determine differently as to whether or not the decedent was the aggressor even though he fired the first shot when the customer (his killer) was advancing on him with a shotgun. Case No. 67464 is, therefore, reversed in part and affirmed in part.

*Judgment in Case No. 67440 is affirmed. Judgment in Case No. 67464 is affirmed in part and reversed in part. Shulman, P. J., and Birdsong, J., concur.*

DECIDED FEBRUARY 15, 1984 —
REHEARING DENIED MARCH 7, 1984 —

*Henry O. Jones III*, for appellant.
*Lee R. Redmond, Jr.*, for appellee (case no. 67440).
*James M. Skipper, Jr.*, for appellee (case no. 67464).